727 N.E.2d 362 (2000)
189 Ill.2d 401
245 Ill.Dec. 109
The PEOPLE of the State of Illinois, Appellee,
v.
Floyd RICHARDSON, Appellant.
No. 83579.
Supreme Court of Illinois.
February 17, 2000.
Rehearing Denied April 3, 2000.
*366 Thomas Peters, Julie B. Aimen, Chicago, for Appellant.
James E. Ryan, Attorney General, Springfield, Richard A. Devine, State's Attorney, Chicago (William L. Browers, Assistant Attorney General, Chicago, Renee G. Goldfarb, Sally L. Dilgart, Assistant State's Attorneys, of counsel), for the People.
Justice FREEMAN delivered the opinion of the court:
Defendant, Floyd Richardson, petitioned the circuit court of Cook County for post-conviction relief pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 (West 1998)). The circuit court dismissed defendant's petition without an evidentiary hearing. Defendant appeals directly to this court. 134 Ill.2d R. 651(a). We affirm.

BACKGROUND
In defendant's direct appeal, this court recited the details of his crimes. See People v. Richardson, 123 Ill.2d 322, 123 Ill. Dec. 908, 528 N.E.2d 612 (1988). We need not repeat those details here. Defendant was charged with, inter alia, the intentional, *367 knowing, and felony murder (Ill.Rev. Stat.1981, ch. 38, pars. 9-1(a)(1), (a)(2), (a)(3)) and the armed robbery (Ill. Rev. Stat.1981, ch. 38, par. 18-2) of the victim, George Vrabel. The victim was a grocery store clerk whom defendant fatally shot while robbing the store. At the close of the evidence, the jury returned general verdicts of guilty of murder and armed robbery.
Defendant waived a sentencing jury. At the first stage of the death sentencing hearing, the trial judge determined that defendant was eligible for the death penalty because he murdered the victim in the course of committing another felony, i.e., armed robbery. See Ill.Rev.Stat.1981, ch. 38, par. 9-1(b)(6). At the close of the second stage of the death sentencing hearing, the circuit court sentenced defendant to death on the murder conviction and to a concurrent, extended prison term of 60 years on the armed robbery conviction.
Defendant's sentence was stayed pending direct appeal to this court. Ill. Const. 1970, art. VI, § 4(b); 134 Ill.2d Rs. 603, 609(a). This court affirmed defendant's convictions and sentences. People v. Richardson, 123 Ill.2d 322, 123 Ill.Dec. 908, 528 N.E.2d 612 (1988). The United States Supreme Court denied defendant's petition for a writ of certiorari. Richardson v. Illinois, 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989).
On January 7, 1991, defendant filed in the circuit court a petition for post-conviction relief. On March 4, 1997, the circuit court granted the State's motion to dismiss the petition without an evidentiary hearing. We will discuss additional relevant facts in the context of the issues raised on appeal.

DISCUSSION
A proceeding brought under the Post-Conviction Hearing Act (Act) is not an appeal of a defendant's underlying judgment. Rather, it is a collateral attack on the judgment. The purpose of the proceeding is to resolve allegations that constitutional violations occurred at trial, when those allegations have not been, and could not have been, adjudicated previously. To be entitled to post-conviction relief, the petitioner bears the burden of establishing a substantial deprivation of constitutional rights. Also, determinations of the reviewing court on the prior direct appeal are res judicata as to issues actually decided; issues that could have been presented on direct appeal but were not are deemed waived. People v. Evans, 186 Ill.2d 83, 89, 237 Ill.Dec. 118, 708 N.E.2d 1158 (1999); People v. Tenner, 175 Ill.2d 372, 377-78, 222 Ill.Dec. 325, 677 N.E.2d 859 (1997).
The petitioner in a post-conviction proceeding is not entitled to an evidentiary hearing as of right. Rather, the Act permits summary dismissal of a nonmeritorious petition. The allegations in the petition, supported where appropriate by the trial record or accompanying affidavits, must show a substantial violation of constitutional rights. Evans, 186 Ill.2d at 89, 237 Ill.Dec. 118, 708 N.E.2d 1158; People v. Caballero, 126 Ill.2d 248, 259, 128 Ill.Dec. 1, 533 N.E.2d 1089 (1989). For the purpose of determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in any accompanying affidavits, in light of the original trial record, are to be taken as true. Evans, 186 Ill.2d at 89, 237 Ill.Dec. 118, 708 N.E.2d 1158; People v. Coleman, 183 Ill.2d 366, 380-82, 233 Ill.Dec. 789, 701 N.E.2d 1063 (1998). The circuit court's dismissal of a post-conviction petition is reviewed de novo. Coleman, 183 Ill.2d at 387-89, 233 Ill.Dec. 789, 701 N.E.2d 1063.
On appeal, defendant contends that he was denied his constitutional rights at trial due to the: (1) prosecution's discriminatory use of its peremptory challenges during voir dire to exclude African-American venirepersons from the jury; (2) ineffective assistance of counsel at trial and on direct review; and (3) circuit court's denial of additional funds for expert witnesses.

*368 I. Batson Claim
Defendant claims that the prosecution denied his constitutional rights by its discriminatory use of peremptory challenges during voir dire at his trial. When defendant was tried in 1984, Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), and its Illinois offspring expressed the controlling law.
In Swain, the United States Supreme Court held that a criminal defendant could not claim an equal protection violation based on a prosecutor's racially discriminatory use of peremptory challenges to exclude African-Americans from the jury in that particular trial. Rather, a defendant would prevail on such a claim if the defendant could show that a prosecutor in a county was systematically excluding persons from juries for racially motivated reasons "in case after case." Swain, 380 U.S. at 223, 85 S.Ct. at 837, 13 L.Ed.2d at 774. This court repeatedly declared Swain to be controlling in Illinois. E.g., People v. Lyles, 106 Ill.2d 373, 392-95, 87 Ill.Dec. 934, 478 N.E.2d 291 (1985); People v. Williams, 97 Ill.2d 252, 273-80, 73 Ill.Dec. 360, 454 N.E.2d 220 (1983).
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Court reaffirmed the principle that the State denies an African-American defendant the equal protection of the laws when it tries the defendant before a jury from which members of the defendant's race have been purposely excluded. Batson, 476 U.S. at 85, 106 S.Ct. at 1716, 90 L.Ed.2d at 79-80. Batson held that a defendant could establish a case of racial discrimination in the selection of his jury solely on evidence concerning the prosecutor's use of peremptory challenges at defendant's own trial. Batson, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87; see People v. Andrews, 146 Ill.2d 413, 423, 167 Ill.Dec. 996, 588 N.E.2d 1126 (1992). Because defendant's case was pending on direct review when Batson was decided, Batson was applicable retroactively to defendant's trial. See Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).
However, Batson requires "a defendant's timely objection to a prosecutor's challenges." (Emphasis added.) Batson, 476 U.S. at 99, 106 S.Ct. at 1725, 90 L.Ed.2d at 89-90. A defendant who fails to raise a Batson objection before the jury is sworn waives the issue. People v. Fair, 159 Ill.2d 51, 71, 201 Ill.Dec. 23, 636 N.E.2d 455 (1994). This rule applied under the old rule of Swain (e.g., People v. Gaines, 88 Ill.2d 342, 359, 58 Ill.Dec. 795, 430 N.E.2d 1046 (1981)) and applies to cases pending on appeal when Batson was decided (e.g., People v. Evans, 125 Ill.2d 50, 61-62, 125 Ill.Dec. 790, 530 N.E.2d 1360 (1988); accord People v. Holder, 153 Ill.App.3d 884, 886, 106 Ill.Dec. 700, 506 N.E.2d 407 (1987)). Thus, a defendant who failed to object to the prosecution's use of peremptory challenges under the old rule of Swain cannot receive on appeal the benefit of the new rule announced in Batson. People v. Pecor, 153 Ill.2d 109, 125-26, 180 Ill.Dec. 50, 606 N.E.2d 1127 (1992); accord Teague v. Lane, 489 U.S. 288, 297, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334, 347 (1989) (under Illinois law, failure to raise Swain claim at trial and on direct review waives Batson-type claim in state post-conviction proceeding).
In this case, defendant concedes, as our review of the record confirms, that his trial counsel did not object during voir dire to the prosecution's use of its peremptory challenges or include this issue in the post-trial motion. We note that while defendant's direct appeal was being briefed, this court remanded several pending cases to trial courts for Batson hearings, where the Batson issue was timely raised at trial. People v. Hooper, 118 Ill.2d 244, 249, 107 Ill.Dec. 250, 506 N.E.2d 1305 (1987) (Ryan, J., concurring) (describing court as remanding "all cases on review in which the Batson issue is viable" to circuit courts for Batson hearings); see, e.g., Evans, 125 *369 Ill.2d at 59-60, 125 Ill.Dec. 790, 530 N.E.2d 1360. Defendant has waived this claim.

II. Ineffective Assistance of Counsel
Defendant next claims that he was denied his constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const.1970, art. I, § 8. Defendant contends that: (A) appellate counsel failed to raise a Batson objection, and (B) trial counsel failed to investigate and introduce evidence at the death sentencing hearing.
To establish a claim of ineffective assistance of counsel, a defendant must satisfy the familiar Strickland test. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The test is composed of two prongs: deficiency and prejudice. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; see People v. Brisbon, 164 Ill.2d 236, 245-46, 207 Ill.Dec. 442, 647 N.E.2d 935 (1995).
First, the defendant must prove that counsel made errors so serious, and that counsel's performance was so deficient, that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. A court measures counsel's performance by an objective standard of competence under prevailing professional norms. To establish deficiency, the defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy. Evans, 186 Ill.2d at 93, 237 Ill. Dec. 118, 708 N.E.2d 1158; People v. Hampton, 149 Ill.2d 71, 108-09, 171 Ill. Dec. 439, 594 N.E.2d 291 (1992).
Second, the defendant must establish prejudice. The defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The prejudice prong of Strickland entails more than an "outcome-determinative" test. The defendant must show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. Evans, 186 Ill.2d at 93, 237 Ill.Dec. 118, 708 N.E.2d 1158; People v. Whitehead, 169 Ill.2d 355, 380-81, 215 Ill.Dec. 164, 662 N.E.2d 1304 (1996).
A defendant must satisfy both prongs of the Strickland test. Therefore, "failure to establish either proposition will be fatal to the claim." People v. Sanchez, 169 Ill.2d 472, 487, 215 Ill.Dec. 59, 662 N.E.2d 1199 (1996).

A. Failure to Raise Batson Objection

Defendant contends that he did not receive effective assistance of counsel on direct review. Defendant acknowledges that Swain and its Illinois offspring controlled at the time of his trial and, accordingly, his trial counsel was not constitutionally deficient by failing to make an essentially futile Swain claim. We note that such a contention would not be well taken. See, e.g., People v. Hartfield, 232 Ill.App.3d 198, 207, 173 Ill.Dec. 79, 596 N.E.2d 703 (1992) (trial counsel not constitutionally deficient for failing to make a Batson-type objection prior to Batson); People v. Teague, 228 Ill.App.3d 855, 859, 171 Ill. Dec. 48, 593 N.E.2d 868 (1992) (same).
However, defendant's counsel on direct review did not raise and argue the Batson issue, although Batson was decided two months prior to the filing of his opening brief. Defendant now argues that his counsel on direct review was constitutionally deficient by failing to raise the issue of the prosecution's use of peremptory challenges, either under Batson or other legal theories (see People v. Williams, 97 Ill.2d 252, 274-80, 73 Ill.Dec. 360, 454 N.E.2d 220 (1983) (rejecting various legal theories contrary to Swain)).
A court uses the Strickland analysis also to test the adequacy of appellate counsel. A defendant who contends that appellate counsel rendered ineffective *370 assistance, e.g., by failing to argue an issue, must show that the failure to raise that issue was objectively unreasonable and that, but for this failure, defendant's conviction or sentence would have been reversed. People v. Griffin, 178 Ill.2d 65, 74, 227 Ill.Dec. 338, 687 N.E.2d 820 (1997); Caballero, 126 Ill.2d at 269-70, 128 Ill.Dec. 1, 533 N.E.2d 1089. The sixth amendment right to effective assistance of counsel does not mandate that appellate counsel raise every conceivable argument that might be made. Appellate counsel's assessment of what to raise and argue will not be questioned unless it was patently wrong. People v. Madej, 177 Ill.2d 116, 159, 226 Ill. Dec. 453, 685 N.E.2d 908 (1997) (and cases cited therein); People v. Frank, 48 Ill.2d 500, 505, 272 N.E.2d 25 (1971).
Applying the Strickland test to this contention, we cannot say that counsel on direct review was objectively unreasonable by failing to argue Batson or otherwise contest the prosecution's use of peremptory challenges. Defendant concedes that his trial counsel failed to preserve this issue for review. Appellate counsel is not constitutionally deficient for not arguing a waived issue. See Jackson v. Dugger, 931 F.2d 712, 715 (11th Cir.1991); State v. Hill, 73 Ohio St.3d 433, 441, 653 N.E.2d 271, 279 (1995); Williamson v. Dugger, 651 So.2d 84, 87 (Fla.1994); Carter v. State, 73 Md.App. 437, 439, 534 A.2d 1015, 1016 (1988).
The nonviability of defendant's Batson claim distinguishes this case from People v. Wilson, 273 Ill.App.3d 71, 209 Ill.Dec. 865, 652 N.E.2d 405 (1995). The court in Wilson held that counsel's failure to argue a viable Batson claim on direct review was patently erroneous and prejudicial to the defendants. Wilson, 273 Ill.App.3d at 75, 209 Ill.Dec. 865, 652 N.E.2d 405. In this case, however, trial counsel's waiver of this issue rendered it nonviable. Counsel on direct review was not constitutionally required to argue a waived claim.
Experienced advocates have always emphasized the importance of screening out weaker arguments on appeal and focusing on at most a few key issues. Tenner, 175 Ill.2d at 387, 222 Ill.Dec. 325, 677 N.E.2d 859, quoting Jones v. Barnes, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987, 994 (1983). This is exactly what counsel on direct review accomplished. See People v. Richardson, 123 Ill.2d 322, 123 Ill.Dec. 908, 528 N.E.2d 612 (1988). We uphold the circuit court's dismissal of this claim.

B. Failure to Investigate: Death Sentencing Hearing

Defendant also contends that he did not receive effective assistance of counsel because trial counsel failed to investigate and introduce mitigation evidence at the death sentencing hearing. As previously noted, in reviewing a claim of ineffective assistance of counsel, a court accords much deference to trial counsel's judgment and strongly presumes that counsel's conduct falls within the wide range of reasonable professional assistance. Accordingly, counsel's strategic choices, made after investigating the law and the facts, are virtually unchallengeable. People v. Perez, 148 Ill.2d 168, 186, 170 Ill.Dec. 304, 592 N.E.2d 984 (1992), quoting People v. Franklin, 135 Ill.2d 78, 116-17, 142 Ill.Dec. 152, 552 N.E.2d 743 (1990).
Of course, counsel has a duty to investigate potential sources of mitigation evidence, or to have a reason not to make such an investigation. If mitigation evidence exists, counsel has the duty to introduce it in support of the defendant. However, the failure to offer mitigation evidence at a death sentencing hearing is not itself sufficient to show that defense counsel was ineffective. Counsel's decision whether to present a particular witness is generally a strategic choice which cannot support a claim of ineffective assistance of counsel. Griffin, 178 Ill.2d at 86, 227 Ill. Dec. 338, 687 N.E.2d 820 (and cases cited therein).
In this case, counsel's performance at the death sentencing hearing was *371 clearly a strategic decision. In his opening statement, defendant's trial counsel informed the court that defendant would testify that he was not guilty of the crimes charged. During closing argument, defendant's trial counsel emphasized defendant's relationship with his family:
"Your Honor, the State would say there are no mitigating circumstances here at all, but no one man is just one man. He has an effect on his family. He is part of the family. I know how I feel about my family, and I am sure it is common throughout society. One man is part of a family which helps towards others. His effect towards others. That in itself, being a member of a family, being the kind of member [defendant's mother] says he is, being a part of a family and having a relationship with his family, that witness[es] and Floyd testified to, is by far the greatest mitigation anyone could ever put before you.
* * *
I strongly disagree with [the assistant State's Attorney] that the witnesses in mitigation were not mitigation. That is ridiculous. We have heard from a family. A family that has stayed together, despite a lot of problems, both self-inflicted and from the outside. A family that was left fatherless when most of the children, all of the children, were in school and stayed together, and Floyd is a major part of that family's staying together."
Faced with significant aggravation evidence and defendant's own mitigation testimony, defendant's trial counsel apparently chose to emphasize what he believed to be defendant's major mitigating circumstance. Counsel's strategic decision is entitled to deference. See, e.g., Griffin, 178 Ill.2d at 87, 227 Ill.Dec. 338, 687 N.E.2d 820.
However, defendant contends that his trial counsel was constitutionally deficient because he failed to investigate and introduce mitigation evidence of defendant's:

(1) psychological impairments, and (2) social history.
1. Psychological Impairments
Defendant's post-conviction petition includes affidavits from neuropsychologist Dr. Michael Gelbort and mitigation specialists Dr. David Randall and Jeffrey Eno. Dr. Gelbort found, inter alia, that defendant's IQ was "at the bottom of the low average range and just slightly above the borderline mentally deficient range of functioning." Dr. Gelbort opined that defendant had an "attentional deficit disorder," described as "a form of minimal brain dysfunction arising out of hereditary, congenital, or developmental problems and leads to deviations from normal behavior including, in this case, poor reasoning, problem solving, judgment, and impaired inhibition."
Dr. Gelbort, as well as Dr. Randall and Eno, all concluded that defendant's background is consistent with some type of psychological impairment or abnormality; further, this condition was present and observable in defendant at the time of and subsequent to his crime. Dr. Randall and Eno concluded that defendant's trial counsel should have explored this area of mitigation, and was constitutionally deficient for failing to do so.
This contention fails both the deficiency and prejudice prongs of the Strickland test. First, considering the totality of the circumstances, we cannot say that the performance of defendant's trial counsel was objectively incompetent. Although defendant did not testify on his own behalf at trial, he testified at the sentencing hearing. He maintained his innocence of the crimes charged here and insisted that he was not guilty of these offenses. "`The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.'" Evans, 186 Ill.2d at 96, 237 Ill.Dec. 118, 708 N.E.2d 1158, quoting Strickland, 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.
*372 After defendant testified that he did not commit the murder, it would have been contradictory for his trial counsel to present mitigation evidence to explain or clarify why defendant committed the murder. See, e.g., Sanchez, 169 Ill.2d at 491, 215 Ill.Dec. 59, 662 N.E.2d 1199; People v. Holman, 164 Ill.2d 356, 373, 207 Ill.Dec. 467, 647 N.E.2d 960 (1995); People v. Kokoraleis, 159 Ill.2d 325, 329-31, 202 Ill.Dec. 279, 637 N.E.2d 1015 (1994). Defense counsel could not be expected to present mitigation evidence that contradicted defendant's protestations of innocence. "`A reasoned decision to make the best of a bad situation by pursuing a particular line of defense satisfies the constitutional minimum.'" Evans, 186 Ill.2d at 97, 237 Ill. Dec. 118, 708 N.E.2d 1158, quoting Kokoraleis v. Gilmore, 131 F.3d 692, 697 (7th Cir.1997).
Even assuming that trial counsel was deficient under the first prong of Strickland, defendant must still show prejudice under the second prong. In the context of a death sentencing hearing, a defendant must prove that there is a reasonable probability that, absent counsel's deficient conduct, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. Coleman, 183 Ill.2d at 403, 233 Ill.Dec. 789, 701 N.E.2d 1063; Griffin, 178 Ill.2d at 87, 227 Ill.Dec. 338, 687 N.E.2d 820. A court must assess prejudice realistically based on the totality of the evidence. Accordingly, it is improper to focus solely on the potential mitigating evidence. Rather, a court must also consider the nature and extent of the evidence in aggravation. People v. Coleman, 168 Ill.2d 509, 538, 214 Ill.Dec. 212, 660 N.E.2d 919 (1995) (collecting cases).
In this case, the aggravation evidence was extensive. We note that, in addition to the evidence adduced at trial, the aggravation evidence included testimony regarding several offenses for which defendant was arrested but not prosecuted. However, when balancing aggravating and mitigating factors, a sentencing judge may consider all relevant and reliable testimony. Specifically, testimony involving misconduct not resulting in prosecution may be reliable and relevant to sentencing. The relevance and reliability of such testimony is left largely to the sentencing judge's discretion. Richardson, 123 Ill.2d at 361-62, 123 Ill.Dec. 908, 528 N.E.2d 612.
The record shows that in November 1971 defendant was arrested for stealing gasoline from an automobile. In March 1972 defendant was arrested for striking a woman in the face. These charges were subsequently dismissed.
Between 1972 and 1975 defendant served in the United States Marine Corps. In October 1975 defendant was arrested for setting an automobile on fire and being involved in a fight among several persons near the car. He was charged with arson and disorderly conduct. When he subsequently failed to appear in court on these charges, an arrest warrant issued. The record does not show the disposition of these charges.
In January 1976 defendant was going to be arrested for disorderly conduct. However, the arresting officer discovered the outstanding arrest warrant for the arson. Leave to file charges for the disorderly conduct was subsequently denied.
In January 1977 defendant and his brother were arrested for robbery. Their victims were 17-year-old David Lomax and his brother Warren. After demanding money from David, defendant and his brother beat David in the face and threw him through a plate glass window. They also attacked Warren, breaking a tooth. Police officers apprehended them. The record does not show the disposition of these charges.
In June 1977 defendant robbed a victim of money and a watch. He pled guilty to robbery and was sentenced to a prison term of one to three years. He was released on parole in February 1978.
*373 In April 1978 defendant stole a van. He was convicted of felony theft and sentenced to a 30-month prison term. He was released from prison in September 1979. Two weeks after his release, defendant was arrested for disorderly conduct; leave to file charges was subsequently denied.
In September 1980 defendant assaulted with a stick in front of the Cook County Criminal Courts Building a witness who was to testify in a case. Defendant was arrested; the charges were later dismissed.
On April 1, 1980, defendant committed the offenses in this case. He robbed a grocery store and fatally shot the victim.
On April 5, approximately one mile away, defendant robbed a tavern. The victim, who was the owner, was standing behind the bar at the cash register. Defendant entered the tavern waiving a handgun. The victim turned to escape. Defendant jumped over the bar and shot the victim in the back. As the victim lay face-up, defendant stood over the victim and asked him where was more money. Defendant departed when the victim told him that there was no more money.
In January 1981 defendant was arrested for possession of a controlled substance. He was convicted and sentenced to a one-year prison term.
In February 1981 defendant was on parole. Chicago police officers went to defendant's apartment to serve him with a warrant. Upon entry, they saw defendant holding a laundry bag with the butt of a gun protruding therefrom. The gun was a loaded 20-gauge sawed-off shotgun. The officers arrested defendant and charged him with unlawful use of a weapon. He was convicted and sentenced to a two-year prison term. Defendant was released on parole in January 1982.
In May 1982 defendant was arrested for armed robbery. The testifying victim and her friends drove into a parking lot. Defendant approached them as they were about to exit their car. Defendant produced a pistol, placed it against the victim's side, and demanded all of the group's money and other valuables. He repeatedly threatened to kill the victim, struck her in the face, and tore her shirt. Defendant fled, but was apprehended a short time later.
Defendant was then held in the county jail to stand trial in this case. In December 1983, a correctional officer searched defendant's cell and found homemade liquor and a copy of the bylaws to the Black Gangster Disciple street gang. The officer confiscated these items and showed them to his superior, Sergeant Thomas Cadilis. When Cadilis confronted defendant, he cursed Cadilis, announced, "I am the Black Gangster Disciple," and then struck Cadilis several times. Defendant also head-butted another officer who arrived to assist Cadilis.
In mitigation, defense counsel presented three witnesses: defendant's wife, mother, and defendant himself. Defendant's mother testified that after her husband died, she worked two jobs to make ends meet. Defendant was the second child and oldest son of six children. To help his mother provide for the family, defendant dropped out of high school at approximately age 15, held a paper route, and performed various jobs at a local grocery store. Although defendant worked at various day labor jobs, he could never find steady employment. Accordingly, defendant had nothing to do except "be on the corner."
His mother viewed defendant as the father figure who looked after his mother and siblings. He was close to his siblings and chastised them when they misbehaved. During his periodic imprisonments, he maintained a "fairly close relationship" with his family through visits, telephone calls, and letters.
Defendant's wife testified that defendant tried to support her and their two children. Defendant treated his children well, one of whom particularly admires him. Defendant *374 was a good person who "wanted to accomplish something out of life" and who had to "make life a little better" for her and their children. Defendant experienced problems in life because the world did not accept him.
Defendant, then 29 years old, testified and essentially corroborated the testimony of his mother and wife regarding his employment history. He added that he eventually passed his GED examination. Defendant admitted committing the other crimes for which he had been convicted. However, he denied any involvement in the crimes in the present case, or in the April 5, 1980, tavern armed robbery and shooting. He also denied that he owned the sawed-off shotgun found in his apartment. Further, he did join the Black Gangster Disciple street gang the first time he was imprisoned. However, he did so only to obtain protection. He admitted having gang literature in his prison cell. However, he denied taking part in any gang activity.
Defendant's contention that his trial counsel was constitutionally ineffective for failing to introduce evidence of psychological impairments fails the second prong of the Strickland test. We conclude that there is no reasonable probability that, had defendant's trial counsel introduced defendant's proffered evidence, the trial judge would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. Evidence of mental impairments as described in defendant's affidavits is not inherently mitigating. See Holman v. Gilmore, 126 F.3d 876, 882-84 (7th Cir.1997). "Proof of defendant's mental handicaps not only could evoke compassion from the trial judge, but also could have demonstrated defendant's continued dangerousness." Evans, 186 Ill.2d at 102, 237 Ill.Dec. 118, 708 N.E.2d 1158; accord Coleman, 183 Ill.2d at 406, 233 Ill.Dec. 789, 701 N.E.2d 1063.

2. Social History
Defendant contends that his trial counsel should have investigated and introduced evidence also relating to defendant's social history. Defendant's post-conviction petition includes affidavits from members of defendant's family, a friend of defendant, and mitigation specialists Dr. Randall and Eno. The testimony reflected in these affidavits would have included information on, inter alia, defendant's disadvantaged and troubled childhood, history of substance abuse, strong family ties, and good character.
However, such testimony from these additional witnesses, or additional testimony from the witnesses who did testify, would have been merely cumulative of information already before the trial judge. See Sanchez, 169 Ill.2d at 490-91, 215 Ill.Dec. 59, 662 N.E.2d 1199. Further, such evidence is not inherently mitigating. Stewart v. Gramley, 74 F.3d 132, 136 (7th Cir.1996). The trial judge might have considered such evidence to be an aggravating factor. The judge could have regarded defendant's troubled life, with his criminal record, as an indicator of future dangerousness. See Evans, 186 Ill.2d at 101, 237 Ill.Dec. 118, 708 N.E.2d 1158. Specifically, the trial judge could have considered a history of substance abuse as an aggravating circumstance rather than a mitigating circumstance. See Coleman, 183 Ill.2d at 404, 233 Ill.Dec. 789, 701 N.E.2d 1063; Madej, 177 Ill.2d at 138, 226 Ill.Dec. 453, 685 N.E.2d 908.
We conclude that the introduction of the evidence now proffered by defendant regarding his psychological impairments and social history would not have created a reasonable probability of a different sentence. See Sanchez, 169 Ill.2d at 491-92, 215 Ill.Dec. 59, 662 N.E.2d 1199. We cannot say that the death sentence imposed on defendant was unreasonable or unfair.

III. Additional Funds for Expert Witnesses
Lastly, defendant claims that the circuit court abused its discretion by *375 denying his post-conviction request for additional funds to hire a mitigation specialist and other expert witnesses. Since a post-conviction petitioner does not have a constitutional right to appointed counsel (People v. Porter, 122 Ill.2d 64, 73-75, 118 Ill.Dec. 465, 521 N.E.2d 1158 (1988)), there is no constitutional obligation to provide post-conviction counsel with investigative resources. See People v. Wright, 149 Ill.2d 36, 58-62, 171 Ill.Dec. 424, 594 N.E.2d 276 (1992). Where no constitutional right is implicated, the decision to appoint an expert, or to authorize funds to hire an expert, rests within the sound discretion of the circuit court. See People v. Hall, 157 Ill.2d 324, 339-40, 193 Ill.Dec. 98, 626 N.E.2d 131 (1993); Wright, 149 Ill.2d at 54-58, 171 Ill.Dec. 424, 594 N.E.2d 276.
At a progress hearing on his post-conviction petition, defendant stated that he had retained neuropsychologist Dr. Gelbort, paid for by the Capital Resource Division of the office of the State Appellate Defender. Further, defendant presented a motion for, inter alia, additional funds to hire mitigation specialist Dr. Randall, an eyewitness identification expert, and a ballistics expert.
Defendant requested the eyewitness identification expert and the ballistics expert so that he could demonstrate why his trial counsel was ineffective for failing to hire them. However, when the circuit court ultimately dismissed the post-conviction petition, the court found that these issues were raised and decided on direct review and, therefore, were res judicata (see Richardson, 123 Ill.2d at 338-41, 353-54, 123 Ill.Dec. 908, 528 N.E.2d 612). The circuit court specifically found: "Defendant * * * tries to put a new spin on the old contentions or, at best, uses the ineffective assistance of counsel as a mask." See Evans, 186 Ill.2d at 103, 237 Ill.Dec. 118, 708 N.E.2d 1158 ("A petitioner cannot obtain relief under the Act by rephrasing issues, which were previously addressed, in constitutional terms, such as ineffective assistance of counsel"). The circuit court's disposition of these issues shows that these experts would not have assisted the court in ruling on defendant's post-conviction petition. See People v. Henderson, 171 Ill.2d 124, 156-57, 215 Ill.Dec. 147, 662 N.E.2d 1287 (1996).
Regarding the mitigation specialist, Dr. Randall, defendant was provided with the assistance of counsel and a neuropsychologist to find and present mitigation evidence to support his post-conviction petition. Further, shortly after the circuit court denied defendant additional funds for Dr. Randall, the State Appellate Defender supplied defendant with the services of mitigation specialist Jeffrey Eno, whose affidavit defendant submitted in this post-conviction proceeding. We cannot say that the circuit court abused its discretion in denying defendant's request for additional funds to hire these experts.
We note two procedurally barred arguments of defendant. He argues that his crime, when compared to other murder cases, does not warrant the death penalty. This argument is essentially a request for proportionality review, which defendant raised and this court rejected in the direct appeal. Richardson, 123 Ill.2d at 363, 123 Ill.Dec. 908, 528 N.E.2d 612. That determination is res judicata. See People v. Johnson, 183 Ill.2d 176, 205, 233 Ill.Dec. 288, 700 N.E.2d 996 (1998). Defendant also argues that a less severe sentence can deter crime as effectively as the death penalty. However, defendant could have, but failed to, make this argument in the direct appeal. Therefore, this argument is waived. See Evans, 186 Ill.2d at 91-92, 237 Ill.Dec. 118, 708 N.E.2d 1158.

CONCLUSION
For the foregoing reasons, the order of the circuit court of Cook County dismissing defendant's post-conviction petition is affirmed. The clerk of this court is directed to enter an order setting Thursday, May 18, 2000, as the date on which the sentence of death entered in the circuit court is to be imposed. The defendant shall be executed in the manner provided by law. 725 ILCS 5/119-5 (West 1996). *376 The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, the warden of Tamms Correctional Center, and the warden of the institution where defendant is now confined.
Affirmed.
Chief Justice HARRISON, concurring in part and dissenting in part:
I agree that Richardson's convictions should not be disturbed. In my view, however, his sentence of death cannot be allowed to stand. For the reasons set forth in my dissent in People v. Bull, 185 Ill.2d 179, 235 Ill.Dec. 641, 705 N.E.2d 824 (1998), the Illinois death penalty law violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const.1970, art. I, § 2). Richardson's sentence of death should therefore be vacated, and the cause should be remanded to the circuit court for imposition of a sentence of imprisonment. Ill.Rev.Stat. 1981, ch. 38, par. 9-1(j).