NOTICE
Decision filed 02/08/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210273-U

NO. 5-21-0273

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 19-CF-342 |
| | ) | |
| TERRE THOMAS BROWN, | ) | Honorable |
| | ) | J. Marc Kelly, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1   *Held*: Where the defendant was proved guilty beyond a reasonable doubt of domestic battery, and no reversible error occurred in the proceedings that resulted in his conviction, and where no argument to the contrary would have arguable merit, the defendant's appointed appellate attorney is granted leave to withdraw as counsel, and the judgment of conviction is affirmed.

¶ 2   The defendant, Terre Thomas Brown, was found guilty of domestic battery. He is serving his sentence of probation. The offense was elevated from a misdemeanor to a felony due to the defendant's prior conviction for domestic battery. He now appeals from the judgment of conviction. His appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit. On that basis, OSAD has filed with this court a motion to withdraw as counsel and a brief in support of the motion. See *Anders v. California*, 386 U.S. 738 (1967). This court granted the defendant an opportunity to file a written response to OSAD's

1

motion, or a brief, memorandum, etc., explaining why his appeal has merit, but he has not chosen to take advantage of that opportunity. Having examined OSAD's *Anders* motion and brief, along with the entire record on appeal, this court agrees with OSAD that this appeal has no merit. Accordingly, OSAD is granted leave to withdraw as counsel on appeal, and the judgment of conviction, entered by the circuit court of Fayette County, is affirmed.

¶ 3                                              BACKGROUND

¶ 4      The defendant was charged with domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2018)), a Class 4 felony (*id.* § 12-3.2(b)). It was alleged that he knowingly made physical contact of an insulting or provoking nature with Katelyn Mitchell, a member of his family or household, by shoving her to the ground and grabbing her throat, and that he had a prior conviction for domestic battery in Fayette County case No. 17-CF-235. The defendant waived his right to a trial by jury, and he requested a bench trial.

¶ 5      In June 2021, a bench trial was held. For the prosecution, Katelyn Mitchell, age 20, testified. According to Mitchell, it was 2019 that she and the defendant, a coworker, began a romantic relationship. She moved into his apartment on Orchard Street, in Vandalia. However, by October 2019, Mitchell had grown tired of the defendant's "controlling" nature and decided to leave. On October 31, she and the defendant were alone in the apartment. In the defendant's bedroom, Mitchell attempted to pack her clothes and go, but the defendant flung her suitcase across the apartment. Using his hands, the defendant "[p]ush[ed] [Mitchell] down to the ground," as she repeatedly said that she simply wanted to leave. In the kitchen, the defendant "bear hugged [her] and squeezed [her] so tight [she] couldn't breathe." With one hand, the defendant tightly grasped Mitchell's throat, "lifted and shoved [her] to the ground." Mitchell tried to return to the bedroom; however, the defendant "grabbed [her]" and "slammed [her] onto the ground."

2

¶ 6    Eventually, the defendant left the apartment, and Mitchell followed him out.  Mitchell saw that the defendant had her "broken phone" and her car keys with him.  He said that he was going to "throw them in the river."  Then, he left.  At that point, Mitchell was out of the apartment, but she was also locked out and "just sitting there."  Eventually, she contacted her father.  While she was still at the apartment building, but before her father arrived, the defendant returned.  She told him that her father was on his way.  He threw her car keys at her and told her to "get out."  Mitchell's father arrived, and he drove her to his house.  Eventually, Mitchell spoke with the police.  She was, and remained, fearful of the defendant.

¶ 7    On cross-examination by defense counsel, Mitchell stated that, eventually, the defendant told her to get all of her stuff out of his apartment immediately.  She did so.  Then, they walked out of the apartment, and the defendant locked the door from the outside.  The defendant then departed.  Ten to fifteen minutes later, she used a neighbor's telephone in order to contact her father.  Her father lived in Brownstown and needed 15 to 25 minutes to reach the defendant's apartment.  Upon her father's arrival at the apartment, Mitchell placed her clothes in his car, and her father drove her to his house.  Mitchell's stepmother and little sister were at the house.  Mitchell felt sure that she then told her father, stepmother, and little sister about the struggle at the apartment.  However, none of them contacted the police because Mitchell "didn't want the police involved," due to the defendant's repeatedly telling her that if she ever involved the police, she and her family "would be in body bags."  Mitchell conceded that there was "no bruising" on her neck.  She did not look to see whether there were "any marks" from being thrown to the floor.  Mitchell found her own place to live.  Subsequently, her car's windshield was broken, and other incidents occurred that caused her to suspect that the defendant was involved.  Approximately three weeks after the struggle at the apartment, Mitchell met with the police, told them about the

3

struggle at the apartment, and obtained an order of protection. She was still afraid of the defendant, but thought that going to the police was necessary for her safety. Although she mentioned to police that she had told her father, her stepmother, and her little sister about the struggle shortly after it had ended, the police never spoke with any of them. After the struggle at the apartment but before obtaining the order of protection, Mitchell saw the defendant, both at their place of employment and at the house she was renting. There was no violence, and she consented to the defendant's presence at her house. She also consented to sexual relations with him on one occasion.

¶ 8 On redirect examination, Mitchell explained why she had had consensual sex with the defendant. "I just thought that he would change if I could make him happy. So I just thought that he would be nice to me afterwards."

¶ 9 Rob Thompson, a Vandalia police officer, testified that on November 21, 2019, Katelyn Mitchell and her mother arrived at the police station and said that they wanted to file a domestic-battery report. Thompson asked when the incident had occurred, and Mitchell answered that the date of the battery was October 31, 2019. When Thompson asked Mitchell why she had waited so long to report the incident, Mitchell answered that she had gone to the state's attorney's office to report it, but that office had sent her to the police department to file a report. Thompson, based on his years of experience, knew that some domestic-battery victims waited before reporting, perhaps due to fear or embarrassment. After speaking with Mitchell, Thompson telephoned the defendant. The defendant told Thompson that he recalled the disagreement between himself and Mitchell, but he denied committing any type of battery. The defendant admitted that he had taken Mitchell's keys, but said that he returned them later that evening, and he denied taking her cell phone.

4

¶ 10     On cross-examination by defense counsel, Thompson stated that Mitchell's mother seemed "aggravated" when she and her daughter came to the police station. Thompson said that his interview with Mitchell lasted approximately five minutes. She seemed upset at the time. When Thompson asked Mitchell why she had not contacted the police immediately after the incident, she stated that she was scared that the defendant would harm her family, for the defendant had threatened to kill her family. Thompson asked Mitchell whether there were any witnesses to the battery, and Mitchell answered in the negative. When he asked whether she had any injuries, she again said no. Mitchell stated that after the incident with the defendant, she went to a neighbor's house and telephoned her father to pick her up. However, Thompson did not speak with that neighbor or with Mitchell's father.

¶ 11     The State asked the court to take judicial notice of its file in case No. 17-CF-235 (*i.e.*, the domestic-battery case that was referenced in the charging instrument in the instant case). The State then rested.

¶ 12     The defense called Michelle J. Durbin of Vandalia. Durbin was the defendant's mother. She testified that on October 31, 2019, at 5 or 6 p.m., the defendant and Katelyn Mitchell stopped by her house. She remembered that trick-or-treating was that night. They stayed for "a good hourish." There was no indication of any problem between them, and Katelyn seemed happy.

¶ 13     The defendant testified on his own behalf. He remembered taking Katelyn's car keys on that evening in late October 2019. He did not take the keys from her hand, and it was not at all unusual for him to drive Katelyn's car due to the problems with his own car. The defendant wanted to get away from his apartment because he and Katelyn, who was his girlfriend at the time, had been arguing. He thought that by leaving the apartment, he would provide a much-needed "cool[ing] off" period for both of them, something he had done successfully before. Shortly after

5

the defendant left, he returned to the apartment building. He found Katelyn outside. She explained that she had locked herself out of the apartment. The defendant returned her keys to her. With the assistance of her father, Katelyn moved out of the apartment that evening. The argument between the defendant and Katelyn never became physical. There was no shoving, strangling, etc.

¶ 14    After the defendant testified, the prosecutor asked the court to allow it to submit into evidence the record notes of the city council's meeting of August 19, 2019, explaining that those notes concerned the date of Halloween. At that point, defense counsel stipulated that Michelle J. Durbin had testified about events that occurred on October 26, which was trick-or-treat night in Vandalia; Durbin did not intend to testify about any events occurring on October 31. Defense counsel said that he and Durbin had simply confused the date.

¶ 15    At the trial's end, the court took the matter under advisement. One week later, the court entered an order finding the defendant guilty. The court noted that Mitchell's testimony was the only evidence of guilt, and that the defendant's testimony directly contradicted it. Mitchell's testimony was more credible, the court found, and when combined with the court's observations of witness demeanor, it constituted proof beyond a reasonable doubt.

¶ 16    Subsequently, the defendant filed a "motion for finding of not guilty notwithstanding verdict." The defendant claimed, *inter alia*, that the State's case rested solely on the testimony of the complainant, and that the State "made no attempt to deny" the defendant's allegation that the complainant "bears animus toward the defendant for something other than the alleged offense." He further claimed, "An unrebutted motivation to lie or exaggerate should prevent a finder of fact from finding evidence sufficient to the clear proof [*sic*] beyond a reasonable doubt."

¶ 17    In September 2021, the court held a hearing on the defendant's motion for a finding of not guilty notwithstanding the verdict. Defense counsel emphasized the lack of corroborating

witnesses and the lack of injuries to Katelyn Mitchell. He also seemed to suggest that people in Fayette County, including the police, tend to believe a black person (such as the defendant) far less readily than they believe a white person (such as Katelyn Mitchell). In deciding the motion, the circuit court noted that, at a bench trial, it was the sole determiner of witness credibility. Based upon the testimony that it heard, and the witnesses' "mannerisms" and "actions on the stand," the court determined that the State had met its burden.

¶ 18 The court promptly turned to sentencing. The parties announced that they had reached an agreement as to the defendant's sentence—probation for 30 months, with court costs and probation fees, but no fine. The court accepted that agreement, and pronounced sentence. Finally, the court admonished the defendant as to his appeal rights, and the defendant indicated his understanding.

¶ 19 The defendant filed a notice of appeal, thus perfecting the instant appeal. The circuit court appointed OSAD to represent the defendant herein.

¶ 20                                              ANALYSIS

¶ 21 This appeal is from a judgment of conviction. As previously noted, the defendant's attorney on appeal, OSAD, has concluded that this appeal lacks merit, and it has filed with this court an *Anders* motion to withdraw as counsel, along with a supporting brief. The defendant has not filed any type of reply. OSAD's supporting brief presents two potential issues on appeal. As the following discussion will show, this court does not find anything of value in either of the two issues.

¶ 22                 First Potential Issue: Whether Defendant Was Proved Guilty

¶ 23 The first potential issue raised by OSAD in its *Anders* brief is whether the defendant was proved guilty beyond a reasonable doubt. The State bears the burden of proving each element of an offense, and proving it beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315-16

7

(1979). When, on appeal, the defendant challenges the sufficiency of the evidence, this court will view the evidence in the light most favorable to the State, and will ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 35. The conviction will not be reversed for insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt as to the defendant's guilt. *Id.* This standard of review preserves the trier of fact's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319. This court will not retry the defendant, and all reasonable inferences will be drawn in favor of a finding of guilt. *People v. Swenson*, 2020 IL 124688, ¶ 35. The testimony of a single credible witness suffices for a conviction. *Id.* ¶ 36. The trier of fact's credibility determinations are entitled to "great weight." *People v. Smith*, 185 Ill. 2d 532, 542 (1999). Where the findings of fact must be determined from the credibility of the witnesses, this court will defer to the trial court's factual findings, unless they are against the manifest weight of the evidence. *Swenson*, 2020 IL 124688, ¶ 36.

¶ 24    Here, the court found the defendant guilty of felony domestic battery. The elements of that crime, as charged, are that the defendant, knowingly and without legal justification, made physical contact of an insulting or provoking nature with a household member, and that the defendant had a prior conviction for domestic battery. 720 ILCS 5/12-3.2 (West 2018).

¶ 25    Here, there was no dispute that Katelyn Mitchell was a member of the defendant's household, or that the defendant had a prior domestic-battery conviction. The dispute concerned whether the defendant, knowingly and without legal justification, made physical contact of an insulting or provoking nature with Mitchell. Mitchell described how she was merely attempting to pack her belongings and leave the defendant's apartment when the defendant repeatedly pushed

8

or "slammed" her to the ground and tightly grasped her throat. The defendant said that although he and Mitchell were arguing, there was no violence. As the trial court noted at trial's end, the real evidence of guilt came from just one witness, Mitchell herself, and the court described such cases as "tougher" than those with "multiple witnesses and other forms of evidence." However, viewing the evidence in the light most favorable to the State, and with due deference to the trial court's credibility determinations, a rational trier of fact could have found the elements of felony domestic battery beyond a reasonable doubt. Therefore, any argument that the State presented insufficient evidence to convict the defendant would lack merit.

¶ 26                 Second Potential Issue: Whether Trial Counsel Was Ineffective

¶ 27     The second potential issue raised by OSAD in its *Anders* brief is whether trial counsel was ineffective for failing to investigate. Every criminal defendant has a constitutional right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland v. Washington*, 466 U.S. 668, 685 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). To prevail on a claim that he received ineffective assistance from counsel, a defendant must show (1) that counsel's assistance was deficient, *i.e.*, that counsel committed errors that "fell below an objective standard of reasonableness," and (2) that he was deprived of a fair trial, *i.e.*, that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-88, 694; *Albanese*, 104 Ill. 2d at 526-27. Both prongs of the *Strickland* test—deficient performance and prejudice—must be satisfied in order to establish ineffective assistance. *Strickland*, 466 U.S. at 687. A failure to satisfy either prong will be fatal to a defendant's claim. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000). The defendant must overcome the strong presumption that the challenged action or

9

inaction may have been the product of sound trial strategy; matters of trial strategy are, in general, immune from ineffective-assistance claims. *People v. Manning*, 241 Ill. 2d 319, 327 (2011).

¶ 28    OSAD lists three unprofessional errors that were allegedly committed by defense counsel. Those three errors are: (1) first, that counsel did not object to prior consistent statement that improperly bolstered Katelyn Mitchell's credibility, or that counsel actively elicited such prior consistent statements; (2) second, that counsel failed to adequately investigate before he formulated a defense strategy and presented a defense witness—the defendant's mother, Michelle J. Durbin; and (3) third, that counsel did not make offers of proof that were sufficient to preserve his allegations of trial court error for review.

¶ 29    First, the prior consistent statements that allegedly bolstered Mitchell's testimony did not add much (if anything) to Mitchell's credibility. OSAD does not even bother to describe these prior consistent statements; instead, it merely refers to the pages in the trial transcript where the statements can be found. It is difficult to figure out what "prior consistent statement" OSAD even has in mind. As OSAD rightly states, defense counsel's handling of this matter—in his cross-examination of Mitchell, etc.—is generally considered trial strategy, citing *People v. West*, 187 Ill. 2d 418, 432 (1999) (decisions concerning what evidence to present rest with trial counsel and are matters of trial strategy, and such decisions are generally immune from claims of ineffectiveness).

¶ 30    Second, defense counsel's failure to further investigate a trial defense, and his calling the defendant's mother, Michelle J. Durbin, as a defense witness, does not amount to ineffective assistance. Durbin testified that the defendant and Katelyn Mitchell were at her house in the early evening of October 31, 2019—the approximate time of the domestic battery at issue here—and everything appeared normal between the two them. The apparent purpose of this testimony was to contradict Mitchell's testimony and to reduce Mitchell's credibility. After Durbin finished

10

testifying, the State sought to submit some government records, which then led defense counsel to stipulate that Durbin had actually been testifying about events that occurred on October 26—five days before the domestic battery—and not on October 31. This turn of events certainly was embarrassing for defense counsel, and it took away one line of defense for the defendant. However, as OSAD states in its *Anders* brief, "there is not a meritorious argument that this error sufficiently prejudiced [the defendant's] defense to meet the standard of ineffective assistance of counsel. This testimony did not affirmatively damage the defense."

¶ 31 Third, defense counsel's failure to make offers of proof, sufficient to preserve errors in this appeal, cannot constitute ineffective assistance because the record does not allow for the requisite showing of prejudice. In the posttrial motion filed in this case, defense counsel wrote that "[i]t is a theory of the [d]efendant that a motivation of the alleged victim to make false claims about the [d]efendant is the open and notorious dislike that the alleged victim's mother has held for the [d]efendant which is based, at least in part, on the race of the [d]efendant." Katelyn Mitchell is white and the defendant is half-black, according to the posttrial motion. "The [d]efendant and the [d]efendant's mother," the posttrial motion continued, "were prepared to testify as to racial slurs used by the alleged victim's mother toward the [d]efendant." This court will set aside the question of how the mother's dislike of the defendant could possibly have affected the daughter's—Katelyn Mitchell's—testimony and credibility. The glaring absence in this case is the lack of an offer of proof—one involving the defendant, his mother, and their testimony about "racial slurs" that they allegedly heard from Katelyn Mitchell's mother. Without an offer of proof, there can be no way of knowing what the evidence might have been. Without something in the record on appeal, there can be no way of knowing whether counsel was ineffective for not demanding an offer of proof. As OSAD suggests, such claims of error "may be better suited to collateral proceedings." See

11

*People v. Henderson*, 2013 IL 114040, ¶ 22 (in certain cases or types of claims, the record will "be incomplete or inadequate to evaluate that claim because the record was not created for that purpose").

¶ 32                                   CONCLUSION

¶ 33     Neither of the two potential issues raised by OSAD in its *Anders* brief has any arguable merit.  Accordingly, OSAD's motion for leave to withdraw as counsel is granted, and the judgment of conviction is affirmed.


¶ 34     Motion granted; judgment affirmed.