FIFTH DIVISION
August 3, 2007

No. 1-05-2083

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| SHARON MARSHALL, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GALLAGHER delivered the opinion of the court:

Defendant Sharon Marshall appeals from the dismissal of her postconviction petition after an evidentiary hearing. Defendant first contends that the circuit court erred in rejecting her argument that her attorney was ineffective in failing to interview or present the testimony of Jimmie Terrell, her codefendant and former husband, at trial. She also argues that this court should reverse the dismissal of her postconviction petition because the attorneys who represented her at the third-stage of postconviction review did not comply with Illinois Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)), even though her counsel at the second stage of proceedings filed a certificate in accordance with the rule. For the reasons stated below, we affirm.

PROCEDURAL HISTORY

I. Trial and Postconviction Proceedings

In 1994, a jury convicted defendant of six counts of first-degree murder and one count of arson in connection with a December 1979 apartment building fire that killed six people. Defendant was sentenced to concurrent sentences of 60 years for each murder and 7 years for arson. Terrell was convicted in 1981, and both his appeal to this court and his postconviction petitions were unsuccessful. Terrell denied involvement in the crimes and presented an alibi defense at his trial.

At defendant's trial, Faith Byas testified that she and defendant were friends. Byas was about 16 years old at the time of the offense, and defendant was in her early twenties. Byas said Terrell planned the fire to harm a man with whom Terrell had a disagreement.[1] Defendant, Terrell and Byas collected a gas can, matches and a gun. Byas said defendant directed her where to find the gas can, and defendant located the weapon.

Defendant drove the three of them to an apartment building, where they knocked at the intended victim's door. When no one answered, they left and returned to the building 15 or 20 minutes later, when Terrell set the fire. Byas testified that someone saw the three of them as they fled the building. Another prosecution witness testified that she saw a man and two women run out of the apartment building. Byas testified that the next day, defendant told her that if questioned by police about the fire, they should say "some Puerto Rican boys" set it. The

_____

[1] Byas testified against defendant and Terrell in exchange for a plea agreement with the State.

1-05-2083

defense presented no witnesses. We affirmed defendant's convictions and sentence on direct appeal. *People v. Marshall*, No. 1-94-1853 (1996) (unpublished order under Supreme Court Rule 23).

In March 1997, defendant sought relief under the Postconviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.* (West 1996)), asserting that her trial counsel was ineffective for failing to present evidence that would have established her innocence. The trial court dismissed defendant's petition as frivolous and patently without merit. This court reversed and remanded for second-stage postconviction proceedings because the trial court did not rule on the petition within 90 days of filing. *People v. Marshall*, No. 1-97-3011 (1998) (unpublished order under Supreme Court Rule 23).

On remand, postconviction counsel was appointed for defendant. Counsel amended the petition to assert that trial counsel was ineffective for failing to present Terrell as a witness. Counsel attached an affidavit of Terrell, who attested that, had he been called to testify in defendant's case, he would have stated that defendant was not involved in the fire and that he took "the full responsibility on behalf of this matter." The trial court granted the State's motion to dismiss defendant's postconviction claims, stating that Terrell's alibi defense at his trial contradicted the theory that he could credibly exculpate defendant by now claiming he set the fire.

Defendant appealed the dismissal of her petition at the second stage of postconviction relief, asserting that an evidentiary hearing was required to allow the trial court to determine Terrell's credibility. This court agreed, concluding that because the defense presented no

3

witnesses at trial, an evidentiary hearing was necessary to allow defense counsel to offer his reasoning for not calling Terrell as a witness at defendant's trial and to allow the State to cross-examine Terrell regarding his attestation that although defendant drove them to the apartment building, defendant was not involved in setting the fire. Therefore, this court reversed the dismissal of defendant's petition and remanded for an evidentiary hearing on defendant's claim that her trial attorney was ineffective, stating that "an evidentiary hearing would *** provide the trial court with sufficient facts to determine whether defendant received ineffective assistance of counsel." *People v. Marshall*, No. 1-01-3246, slip op. at 12 (2004) (unpublished order under Supreme Court Rule 23).

## II. Evidentiary Hearing

At the evidentiary hearing, Terrell testified that he was serving prison time for the murders and arson. Terrell recanted his alibi defense, testifying instead that defendant drove him and Byas to the apartment building and then waited in the car while he and Byas started the fire. Terrell said he did not tell defendant to wait for them. Terrell admitted lying at his own trial but stated that he was now telling the truth because defendant did not participate in the crimes. He said defendant did not ask why they were going to the apartment building.

Defendant's brother, Hoyle Marshall, and defendant's trial counsel, Harry Weber, also testified. Marshall testified that when he and other family members met with Weber to retain him to represent defendant, Weber said he would contact Terrell. However, Weber testified that none of defendant's family members told him to contact or interview Terrell. Weber stated that

after reviewing a transcript of Terrell's trial, he would "never" have called Terrell as a witness because Terrell was "less than credible *** and he would not be believed," and Terrell's alibi testimony would not have helped defendant's case.

At the close of testimony in the evidentiary hearing, the trial court concluded that Weber's decision not to present Terrell as a witness was reasonable because if Terrell's original alibi defense was true, Terrell would not have been able to credibly attest to defendant's participation in the crimes. The court further stated that had Terrell testified, as stated in his affidavit, that he committed the offenses with Byas and without defendant's direct involvement, Terrell would have been impeached by his trial testimony that he was not involved in the fire. Therefore, the court determined, it could not conclude that the outcome of defendant's trial would have been different had Terrell testified, and defendant failed to prove a substantial denial of her constitutional rights. The court dismissed defendant's postconviction petition.

## ANALYSIS

A postconviction petition is a collateral attack on a prior conviction and sentence and therefore is limited to constitutional matters that either were not or could not have been previously adjudicated; it is not a substitute for a direct appeal. *People v. Rissley*, 206 Ill. 2d 403, 411-12, 795 N.E.2d 174, 178-79 (2003). If a defendant's postconviction petition is not summarily dismissed at the first stage, counsel may be appointed at the second stage to represent defendant and amend his or her postconviction claims. 725 ILCS 5/122-2.1 (West 2004). Fact-finding and credibility determinations are to be made at the third stage of postconviction

1-05-2083

proceedings, *i.e.*, at an evidentiary hearing. *People v. Coleman*, 183 Ill. 2d 366, 385, 701 N.E.2d 1063, 1073-74 (1998).


I. Effectiveness of Trial Counsel

Defendant contends that the trial court erred in holding that her trial attorney provided effective assistance. She asserts Weber was ineffective because he did not interview Terrell and present his testimony at her trial. Her essential position is that Terrell's testimony in her defense would have been better than Weber's decision to present no witnesses.

To support a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and, furthermore, that counsel's actions resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). It is the defendant's burden to affirmatively prove prejudice. *Strickland*, 466 U.S. at 693, 80 L. Ed. 2d at 697, 104 S. Ct. at 2067. In evaluating sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

When a postconviction petition is advanced to the third stage, and when such fact-finding and credibility determinations are involved (as opposed to a third-stage proceeding where no new evidence is presented and the issues are purely ones of law), this court will not reverse the decision of the trial court unless it is manifestly erroneous. *People v. Pendleton*, 223 Ill. 2d 458,

6

473, 861 N.E.2d 999, 1008 (2006). Manifest error is error that is clearly evident, plain and indisputable. *People v. Morgan*, 212 Ill. 2d 148, 155, 817 N.E.2d 524, 528 (2004).

Defendant first argues that the trial court applied an incorrect standard at the evidentiary hearing. Defendant asserts that she needed to establish that she did not receive a fair trial due to counsel's performance, not that she would have been acquitted had the alleged error not been made. Indeed, our supreme court has observed that the prejudice component of *Strickland* "entails more than an 'outcome-determinative' test"; rather, "[t]he defendant must show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *People v. Richardson*, 189 Ill. 2d 401, 411, 727 N.E.2d 362, 369 (2000). Moreover, the United States Supreme Court stated in *Strickland* that "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. Therefore, defendant must show that she was denied a fair trial due to her counsel's alleged ineffectiveness, not that the result of her trial was affected.

We next note, however, that defendant's arguments on the prejudice/unfairness prong of *Strickland* are irrelevant unless we also conclude that her trial counsel's performance fell below an objective standard of reasonableness. Defendant contends that Weber's decision not to present Terrell's testimony was unsound. Defendant acknowledges that strategic decisions such as the presentation of particular witnesses are generally unchallengeable. "Counsel's decision whether to present a particular witness is generally a strategic choice which cannot support a

claim of ineffective assistance of counsel." *Richardson*, 189 Ill. 2d at 414, 727 N.E.2d at 370.

Defendant first asserts that Weber could not have made an informed decision to exclude Terrell as a witness without interviewing Terrell. Weber and defendant's brother offered conflicting accounts about whether Weber was asked to interview Terrell and, furthermore, whether he promised to do so. It is true that "[t]he failure to investigate alone can constitute ineffective assistance if it was prejudicial and did not conform to minimal professional standards." *People v. Kelley*, 304 Ill. App. 3d 628, 635, 710 N.E.2d 163, 169 (1999). Defendant claims that Weber was required to speak to Terrell to determine if his testimony would be of value.

The failure to interview a known witness can indicate incompetence if the testimony of the witness may exonerate defendant. *People v. Steidl*, 177 Ill. 2d 239, 256, 685 N.E.2d 1335, 1343 (1997). However, whether a failure to investigate the testimony of a potential witness amounts to incompetence depends on the value of the evidence to the case. *Steidl*, 177 Ill. 2d at 256, 685 N.E.2d at 1343. Here, although Weber did not interview Terrell, the attorney was aware of the substance of the testimony that Terrell would have offered. Weber reviewed Terrell's testimony at his own trial and concluded that Terrell's alibi defense contradicted his later statement that he committed the offense with Faith Byas while defendant waited in the car, thus opening the door to substantial impeachment.[2] If Terrell had testified that defendant drove

_____

[2] Relying upon the judge's observation at her trial that Weber was "unprepared" and "fumbling" through the transcript of Terrell's trial during his cross-examination of Byas, defendant argues that Weber was not sufficiently familiar with Terrell's account of the events

them to the building but remained in the car while he and Byas entered the building to set the fires, the State undoubtedly then would have impeached Terrell with his prior alibi defense, therefore weakening the effect of Terrell's testimony. Weber reasonably determined that presenting Terrell's potential testimony would not further defendant's case. See *People v. Guest*, 166 Ill. 2d 381, 400, 655 N.E.2d 873, 882 (1995) (counsel may exercise discretion and reasonably decline to call a witness if testimony would be harmful to defendant, *e.g.*, subject to damaging impeachment).

Defendant nevertheless argues that she could not have been convicted without Byas's testimony, which she contends was bolstered by the absence of any other account. She asserts that Terrell's testimony that he and Byas alone set the fire would have challenged Byas's otherwise uncontradicted testimony that defendant directly participated in setting the fire. Byas testified in exchange for a plea agreement, a fact that was disclosed to the jury. See *People v. Joe*, 207 Ill. App. 3d 1079, 1082, 566 N.E.2d 801, 805 (1991) (testimony of accomplice should be viewed with suspicion by trier of fact). Moreover, the record establishes that Weber cross-examined Byas at defendant's trial, and, thus, the credibility of Byas's version of events did not

leading to the fire. However, Weber's use of the transcript of Terrell's trial in cross-examining Byas was related to Byas's testimony at the earlier trial, not Terrell's testimony. Additionally, we do not read the record to indicate that Weber lacked the requisite knowledge of Terrell's testimony at his trial, particularly in light of Weber's statement at the evidentiary hearing that he reviewed Terrell's trial transcript before deciding not to call him as a witness at defendant's trial.

go unquestioned.

Still, defendant contends that Weber should have at least presented Terrell's testimony and allowed the trier of fact to determine his credibility. Defendant claims that even diminished by impeachment, Terrell's credibility would be equal to that of Byas, who originally denied participating in the crime and then agreed to testify for the State against Terrell and defendant. However, given the potential for substantial impeachment, we cannot conclude that the jury at defendant's trial clearly would have found Terrell's testimony more believable than that of Byas.

Defendant cites *People v. Gibson*, 244 Ill. App. 3d 700, 612 N.E.2d 1372 (1993), to support her assertion that her counsel's presentation of Terrell's testimony could have lessened the effect of Byas's account. However, we find *Gibson* more pertinent for its holding that questions such as these that explore an attorney's trial strategy are best examined after an evidentiary hearing, as occurred there. See *Gibson*, 244 Ill. App. 3d at 704, 612 N.E.2d at 1374-75 ("[o]nce evidence is heard on the subject, the circuit court will be in a better position to determine whether a *Strickland* deprivation of counsel occurred"). Here, that has been already done, and the trial court's ruling based on the evidence that was presented at that hearing was not manifestly erroneous.

In summary, defendant's challenge to the reasonableness of her trial counsel's actions is unavailing. Given the contradictions in Terrell's accounts and the potential for substantial impeachment, the benefit that defendant would have received had Weber interviewed Terrell and presented his testimony at defendant's trial was highly dubious. Terrell's trial testimony, as shown by his transcript and reviewed by Weber, indicated to Weber that in order to assist

defendant, Terrell would have to present a different version of the events that led to the fire than the account to which he testified at his own trial. Weber did not need to interview Terrell to reasonably conclude that Terrell would not offer credible testimony at defendant's trial. Because Weber's decision was reasonable, defendant's attempt to show counsel's ineffectiveness has failed. See *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069 ("there is no reason for a court deciding an ineffective assistance claim *** even to address both components of the inquiry if the defendant makes an insufficient showing on one"). Therefore, the trial court's determination that Weber's decision did not violate *Strickland* was not manifestly erroneous.

Before considering defendant's next main claim of error, we note defendant's assertion that the trial court misconstrued the purpose of an evidentiary hearing in a postconviction case. She contends that the trial court erroneously suggested that it was not required to consider defense counsel's overall performance at trial to determine whether the decision not to call Terrell as a witness constituted ineffective assistance.

To review, this court remanded for an evidentiary hearing to allow the trial court to consider, given that defense counsel presented no witnesses, whether counsel's failure to call Terrell as a witness constituted trial strategy. Defendant points to rulings at the evidentiary hearing in which the court sustained objections to postconviction counsel's questioning of trial attorney Weber. Defendant's postconviction counsel elicited testimony from Weber that Weber had presented no defense witnesses at trial. The trial court sustained the State's relevance objection to that testimony.

11

Postconviction counsel asserted that the "type of defense that [Weber] presented is entirely relevant to ineffective assistance of counsel," and the exchange continued:

"MR. LANDRUM [postconviction counsel]: Your Honor, I think *** what happened at trial and [Weber's] subsequent decision as to whether or not to deal with Jimmy Terrell, I think the type of defense that he presented is entirely relevant to ineffective assistance of counsel.

THE COURT: That's not within the mandate of the Appellate Court. As [Assistant State's Attorney] Shlifka indicated today, and reminded me, *** the mandate of the court dealt with his alleged incompetence and in not calling Jimmy [sic] Terrell, not investigating the case as far as Jimmy [sic] Terrell was concerned. MR. LANDRUM: And I think that should be taken in the context of what truly transpired at the trial.

For instance, he had no witnesses, and if he had the chance to interview somebody like Jimmy [sic] Terrell who could have provided exculpatory testimony, I think it's entirely relevant as to what type of evidence he did present.

THE COURT: Whatever type of defense he submitted is a matter of record."

Defendant argues that the trial court's ruling on the relevance objection prevented her postconviction counsel from fully cross-examining Weber about his representation.

The question was intended to highlight that Weber presented no witnesses at defendant's trial, of which the court was clearly aware, given that the same judge also presided over defendant's trial, and also given the prior analysis of this court in remanding for the evidentiary

12

hearing. The above-quoted colloquy indicates that the trial court correctly considered the focus of the hearing to be whether Weber was ineffective in failing to call Terrell as a witness. The trial court was correct in stating that its task was to examine Weber's decision not to call Terrell, as opposed to reexamining the entire defense strategy in the trial. Thus, the record does not support defendant's claim that the trial court misunderstood the nature of the evidentiary hearing.

## II. Postconviction Counsel's Compliance with Supreme Court Rule 651(c)

Defendant's remaining contention on appeal is that this court should reverse the dismissal of her postconviction petition because the attorneys who were appointed to represent her at the evidentiary hearing did not comply with Supreme Court Rule 651(c), even though second-stage counsel already had met the rule's requirements.

Because no constitutional right to counsel exists in postconviction proceedings, such a right of a defendant is wholly statutory and is defined in the Postconviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2004)), which allows limited review of constitutional claims that were not presented at trial. *People v. Greer*, 212 Ill. 2d 192, 203, 817 N.E.2d 511, 518 (2004). The Act provides for a process for consideration of the defendant's petition that can include as many as three stages. If the petition is not summarily dismissed at the first stage, as occurred here, or if more than 90 days elapse between a petition's filing and its dismissal, the petition moves to the second stage of postconviction proceedings, where counsel is appointed to represent the defendant and amend his or her postconviction claims. 725 ILCS 5/122-2.1 (West 2004).

Rule 651(c) states, in pertinent part:

"The record *** shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner either by mail or in person to ascertain his contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." 134 Ill. 2d R. 651(c).

Therefore, counsel appointed at the second stage of a postconviction proceeding is required to consult with the defendant, either in person or by mail, examine the trial record, and amend the defendant's *pro se* petition if necessary to properly present the defendant's postconviction claims of constitutional deprivation. 134 Ill. 2d R. 651(c). The Illinois Supreme Court amended Rule 651(c) to set out those specific duties of second-stage postconviction counsel to reflect the court's decisions in *People v. Slaughter*, 39 Ill. 2d 278, 235 N.E.2d 566 (1968), *People v. Garrison*, 43 Ill. 2d 121, 251 N.E.2d 200 (1969), and *People v. Jones*, 43 Ill. 2d 160, 251 N.E.2d 218 (1969). See 134 Ill. 2d R. 651(c), Committee Comments. Those three cases addressed the essential need for appointed counsel at the second-stage of postconviction proceedings. As the supreme court noted in *Slaughter*, the Act "can not perform its function unless the attorney appointed to represent an indigent petitioner ascertains the basis of his complaints, shapes those complaints into appropriate legal form and presents them to the court." *Slaughter*, 39 Ill. 2d at 285, 235 N.E.2d at 569.

Thus, Rule 651(c) is designed to ensure that a defendant receives the required reasonable level of assistance from postconviction counsel. *People v. Suarez*, 224 Ill. 2d 37, 42, 862 N.E.2d

977, 979 (2007). A filed Rule 651(c) certificate creates a presumption of compliance that can be rebutted by the record. *People v. Lander*, 215 Ill. 2d 577, 584, 831 N.E.2d 596, 600 (2005).

After second-stage counsel has consulted with the defendant, examined the trial court record and amended the petition if necessary, the State can move to dismiss the petition. 725 ILCS 5/122-4, 122-5 (West 2004). If the petition makes a showing of a constitutional violation, the petition proceeds to the third stage, at which the court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2004). An evidentiary hearing is held only where the allegations of the postconviction petition make a substantial showing that the defendant's constitutional rights have been violated. *People v. Waldrop*, 353 Ill. App. 3d 244, 249, 818 N.E.2d 888, 893 (2004).

Here, defendant does not dispute that the counsel appointed to represent her at the second stage of postconviction proceedings filed a certificate pursuant to Rule 651(c). Defendant argues, however, that the attorneys who were subsequently appointed to represent her at the third stage of postconviction proceedings (the evidentiary hearing) also were required to file a Rule 651(c) certificate.

Defendant contends that for an appointed attorney to effectively represent a client at the third stage of postconviction proceedings, counsel must consult with the defendant and review the trial court record, as the rule sets out. Defendant argues that Rule 651(c) "is void of utility" if a postconviction attorney at each stage of proceedings is not required to file a Rule 651(c) certificate or otherwise meet the rule's requirements.

The formality of filing a Rule 651(c) certificate has been considered harmless error where the record establishes that appointed counsel met the rule's requirements. See *People v. Peoples*,

346 Ill. App. 3d 258, 262, 804 N.E.2d 577, 580 (2004). Thus, if the record shows that counsel consulted with the defendant, examined the record and amended the petition to present the defendant's claims, the absence of a Rule 651(c) certificate in the record is not fatal. *Peoples*, 346 Ill. App. 3d at 262, 804 N.E.2d at 580. Defendant contends that in addition to not filing a Rule 651(c) certificate, her third-stage counsel did not meet this rule of substantial compliance because although her two appointed attorneys appeared in court with her, they did not consult with her to ascertain her postconviction contentions. However, before considering that allegation, it first must be determined if third-stage counsel's compliance with Rule 651(c) is required when second-stage counsel has already filed a certificate pursuant to the rule.

In asserting that compliance with Rule 651(c) is required of counsel in each stage of postconviction proceedings, defendant relies upon *People v. Rankins*, 277 Ill. App. 3d 561, 564, 660 N.E.2d 1317, 1319 (1996), in which neither second-stage nor third-stage postconviction counsel filed a Rule 651(c) certificate. The court in *Rankins* first found that the record did not establish that second-stage counsel substantially complied with the rule's requirements; counsel did not examine the record or consult with the defendant. *Rankins*, 277 Ill. App. 3d at 564, 660 N.E.2d at 1319.

The *Rankins* court then considered whether third-stage postconviction counsel met Rule 651(c)'s requirements of consulting with the defendant, examining the trial record and possibly amending the defendant's petition. *Rankins*, 277 Ill. App. 3d at 564-65, 660 N.E.2d at 1319-20. The court concluded that third-stage counsel also did not file a Rule 651(c) certificate or otherwise substantially comply with the rule, even though counsel reviewed the record. *Rankins*,

277 Ill. App. 3d at 564-65, 660 N.E.2d at 1319-20. The court determined that counsel's failure to amend the petition did not constitute inadequate representation in the absence of the defendant's contentions of "any fatal omissions." *Rankins*, 277 Ill. App. 3d at 564, 660 N.E.2d at 1319. However, the record did not establish that third-stage counsel spoke to the defendant about his claims. *Rankins*, 277 Ill. App. 3d at 565, 660 N.E.2d at 1319-20.

Pointing to the latter discussion, defendant asserts that *Rankins* demonstrates that third-stage counsel must comply with Rule 651(c) to preserve the rule's purpose. We disagree with defendant that *Rankins*' discussion of the third-stage attorney's compliance with Rule 651(c) in that case establishes that, in every postconviction case, an attorney representing a defendant at the third stage of proceedings is required to meet the rule's requirements when second-stage counsel has already complied with the rule.

The facts of *Rankins* are plainly distinguishable from those here. In *Rankins*, second-stage counsel did not file a Rule 651(c) certificate, and the record did not show that counsel substantially complied with the rule. *Rankins*, 277 Ill. App. 3d at 564, 660 N.E.2d at 1319. The court in *Rankins* then considered whether third-stage counsel met the requirements of Rule 651(c). Therefore, *Rankins*' discussion of third-stage counsel's compliance with Rule 651(c) followed its finding that second-stage counsel did not meet the rule's requirements. In the case at bar, it is undisputed that second-stage counsel filed a Rule 651(c) certificate.

Defendant nevertheless argues that an attorney representing a defendant at each stage of postconviction review must comply with Rule 651(c). She argues that if the court in *Rankins* intended to hold that only second-stage counsel must comply with the rule, the court would have

ended its analysis after determining that second-stage counsel did not do so in that case. However, *Rankins* supports the conclusion that Rule 651(c)'s requirements must be met only once and not, as defendant suggests, by attorneys representing a defendant at each stage of postconviction proceedings. *Rankins* illustrates that one postconviction attorney must comply with Rule 651(c), not that the process must be repeated at each level of postconviction proceedings. We have found no authority, and defendant does not point us to any case, that relies on *Rankins* for the proposition that attorneys at both the second and third stages of postconviction review must comply with the rule.

We note that although Rule 651(c) does not explicitly state at what stage of postconviction proceedings the showing of compliance with its requirements must be made, the rule's purpose is to require appointed postconviction counsel to consult with the defendant to ascertain his claims of constitutional deprivation. See *People v. Lander*, 215 Ill. 2d 577, 585, 831 N.E.2d 596, 601 (2005). The tasks set out in Rule 651(c) – consulting with the defendant, examining the record and, if necessary, amending the petition to present the defendant's claims – are performed by counsel at the second stage of postconviction review so that the State can fully review the defendant's claims and determine if it will move to dismiss them. See *People v. Pendleton*, 223 Ill. 2d 458, 472, 861 N.E.2d 999, 1007 (2006); see also *People v. Fiedler*, 303 Ill. App. 3d 236, 238, 707 N.E.2d 1247, 1248 (1999) (citing to Rule 651(c) in referring to the duties of second-stage postconviction counsel). If the State's motion to dismiss the petition is denied, the petition is deemed to make a substantial showing of a violation of constitutional rights and is the subject of an evidentiary hearing. See 725 ILCS 5/122-6 (West 2004).

It therefore follows that Rule 651(c) applies to attorneys who represent defendants at the second stage of postconviction review. Defendant's position that her third-stage postconviction counsel also must comply with Rule 651(c), even when the rule's requirements have been met at the previous stage, is illogical. An attorney at the evidentiary hearing stage must argue the merits of the postconviction petitioner's claims as presented in the petition following review by counsel at the second stage. Third-stage counsel does not, as Rule 651(c) requires, examine the record or amend the petition further. Counsel at the third stage of postconviction review argues the merits of the petition as it is presented by second-stage counsel. Rule 651(c) does not require third-stage counsel to duplicate the efforts of second-stage counsel. Indeed, second-stage counsel would have already complied with Rule 651(c), and third-stage counsel could not attest to the performance of those tasks by separate counsel.

In conclusion, the court's determination at the third stage of review of defendant's postconviction petition that defendant's counsel was not ineffective in presenting the testimony of Terrell at trial was not manifestly erroneous. Furthermore, Rule 651(c) applies to counsel at the second stage of postconviction proceedings, and, here, it is undisputed that defendant's second-stage counsel met the rule's requirements by filing a certificate.

Accordingly, the dismissal of defendant's postconviction petition is affirmed.

Affirmed.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.