2021 IL App (1st) 182727-U

No. 1-18-2727

Order filed June 30, 2021

Modified upon denial of rehearing September 20, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 13668 |
| | ) | |
| RONALD BATTLE, | ) | Honorable |
| | ) | Allen F. Murphy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Hyman specially concurred, joined by Justice Walker.

**ORDER**

¶ 1    *Held*:   We affirm the dismissal of defendant's postconviction petition over defendant's contentions that the attorney who represented him at the hearing on the State's motion to dismiss did not comply with Supreme Court Rule 651(c) (eff. July 1, 2017), and he did not receive reasonable assistance of postconviction counsel.

¶ 2    Defendant Ronald Battle appeals from the circuit court's dismissal, on the State's motion, of his petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2008)). On appeal, he contends the case should be remanded for further proceedings

when the private attorney who represented him at the hearing on the State's motion filed a facially invalid certificate pursuant to Supreme Court Rule 651(c) (eff. July 1, 2017). Defendant further contends that he was denied the reasonable assistance of postconviction counsel when none of his postconviction attorneys amended the *pro se* petition to overcome procedural bars. We affirm.

¶ 3    Following a jury trial, defendant was found guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2002)) and armed robbery (720 ILCS 5/18-2(a)(2) (2002)) arising from the May 29, 2003 shooting death of James Johns in a jewelry store. Because the facts were detailed on direct appeal (*People v. Battle*, 393 Ill. App. 3d 302 (2009)), we relate only those relevant to the instant appeal.

¶ 4    Prior to trial, defendant filed a motion to suppress alleging that his inculpatory statement was coerced when detectives threatened to charge defendant's mother, girlfriend, and brother, claimed to have arrested defendant's mother and girlfriend, and showed defendant documents memorializing "the alleged arrests."

¶ 5    At the hearing on the motion, Calumet City police officer Donald Joswiak and detective Kevin Rapacz denied telling defendant that his family members would be charged if he did not make a statement, making any "material misrepresentations" to him, or using psychological or physical coercion in order to obtain a statement. The trial court denied the motion.

¶ 6    Defendant also filed a motion *in limine* to present testimony from his mother, Yvonne Key, and girlfriend, Catrina Hines, that his cousin Donnell Coleman admitted to the offenses.

¶ 7    At the hearing on the motion, trial counsel stated Key and Hines would testify that on the one-year anniversary of the shooting, Coleman stated that he was responsible for the murder. Hines would further state that Coleman said he needed money at the time of the shooting because his

girlfriend was pregnant. Trial counsel acknowledged that Coleman denied committing the offenses, but argued that Coleman would not "say he did it" and that defendant was entitled to present a defense. The trial court denied the motion as the out-of-court statement was not made under circumstances that provided a "considerable assurance of reliability."

¶ 8 At defendant's jury trial, Irene Sanchez testified that on May 29, 2003, defendant exited a jewelry store carrying a garbage bag that subsequently broke, causing jewelry and boxes to fall to the ground. Tommy Lee Johnson testified that on June 4, 2003, defendant visited his home and asked him to "get rid" of some jewelry, and that he sold several pieces and gave defendant the money. In a videotaped statement, defendant stated that he robbed the jewelry store because he owed money to a drug dealer, shot Johns, and denied being coerced into making a statement.

¶ 9 Before the State rested, the parties stipulated that six phone calls were made to defendant's home on May 29, 2003, between 8:49 a.m. and 11:21 a.m., each lasting zero seconds, and one at 9:35:35, lasting 1 minute and 38 seconds. A zero-second call meant no one answered the phone, while the leaving of a message reflected as if the phone were actually answered.

¶ 10 Outside the presence of the jury, the parties argued regarding the admissibility of Coleman's alleged statement to Key and Hines. Coleman's attorney, who was present, told the court that his client would deny making the statement. Trial counsel then argued that Coleman's statement was admissible pursuant to *Chambers v. Mississippi*, 410 U.S. 284 (1973), and was crucial to defendant's theory of the case.

¶ 11 The State responded that Coleman's proposed testimony would allow the defense to "get it out there that he supposedly confessed to this murder," and Key's and Hines's impeachment testimony—which the court already found unreliable—would confuse the jury. The trial court then

put Coleman under oath and requested an offer of proof as to his potential testimony. Coleman testified that he did not remember the evening of May 14, 2004, and denied telling Key and Hines that he committed the offenses. The trial court found that Coleman's testimony would serve "no purpose," and barred it. The State moved to prevent any witnesses from testifying about Coleman's alleged statement and the court granted the motion.

¶ 12    Defendant testified that on the morning of May 29, 2003, he was at home on the phone with his friend Amelia Jones when Coleman arrived and asked to borrow defendant's vehicle.[1] After Coleman left, defendant spoke to Jones again and had a brief call with Key. When Coleman returned with a white garbage bag filled with jewelry, defendant assumed the jewelry was stolen. He only gave the videotaped statement because the police threatened to arrest his family members. Defendant denied shooting Johns and to his "knowledge," Coleman did.

¶ 13    The jury found defendant guilty of first degree murder and armed robbery, and that during the commission of these offenses, defendant personally discharged a firearm. After a hearing, the trial court sentenced defendant to 75 years in prison for first degree murder, consisting of 50 years for the offense and an additional 25-year firearm enhancement. The court also sentenced defendant to a consecutive 20-year term for armed robbery.

¶ 14    On direct appeal, we affirmed defendant's convictions and modified his 20-year sentence for armed robbery to run concurrent to his 75-year sentence for first degree murder. See *People v. Battle*, 378 Ill. App. 3d 817 (2008). On May 28, 2009, the Illinois Supreme Court issued a supervisory order directing us to vacate our judgment and reconsider this case in light of *People*

---

[1] In the transcript, defendant identified Amelia's family name as both Jones and Johnson.

*v. Smith*, 233 Ill. 2d 1 (2009). We thereafter affirmed defendant's conviction for murder and vacated his conviction for armed robbery. See *People v Battle*, 393 Ill. App. 3d 302 (2009).

¶ 15    While his direct appeal was pending, defendant filed a *pro se* postconviction petition which the circuit court summarily dismissed for lack of jurisdiction. On appeal, we granted the parties' agreed motion for summary disposition and directed the petition be docketed for further proceedings under the Act. *People v. Battle*, No. 1-07-1264 (May 29, 2009) (dispositional order).

¶ 16    On January 2, 2008, defendant filed a *pro se* petition for relief from judgment (see 725 ILCS 5/2-1401 (West 2006)) alleging that Coleman was the true offender and that defendant's confession was coerced because police officers threatened to charge his mother.

¶ 17    On August 11, 2008, defendant filed a *pro se* postconviction petition alleging he was denied the effective assistance of trial counsel when counsel failed to locate alibi witness Jones and misled defendant as to the "content" of the phone records stipulation at trial. The petition additionally asserted that defendant was denied the effective assistance of appellate counsel when counsel did not challenge trial counsel's effectiveness and the voluntary nature of defendant's confession on direct appeal. Finally, the petition raised a claim of actual innocence based upon "new evidence," namely, a latent fingerprint recovered from the jewelry store which could belong to the actual offender.

¶ 18    Attached to the petition were the affidavits of defendant and Key. Defendant averred that he had unsuccessfully tried to obtain documents, phone records, and police reports from trial counsel to support his claims.

¶ 19    Key averred that on June 4, 2003, she went to a police station where she was questioned for eight hours and told that if she did not return the following day, she would be arrested. When

she returned, she was told she could see defendant after she signed a statement. After signing the statement, she was allowed to see defendant, and she later learned that defendant did not confess until after he saw her. In February 2004, her nephew told her that it was his fault that defendant was "locked up."

¶ 20    On October 29, 2008, the circuit court docketed defendant's *pro se* petitions for postconviction and postjudgment relief and appointed counsel. On June 9, 2009, the State read this court's order directing the clerk to docket the 2007 *pro se* postconviction petition into the record.

¶ 21    On January 15, 2016, postconviction counsel filed a supplemental postconviction petition and certificate pursuant to Supreme Court Rule 651(c) (eff. Feb. 6, 2013). In the certificate, counsel stated that he consulted with defendant by mail, phone, and in person to ascertain defendant's contentions, obtained and read the trial transcripts, and prepared a supplemental postconviction petition which "augment[ed] the concerns already expressed" in defendant's *pro se* petition.

¶ 22    The supplemental petition alleged that defendant was innocent, and his convictions resulted from a denial of due process when he was identified through a "result oriented process" because the sketch generated from Sanchez's interview resembled Coleman rather than defendant and defendant's statement was "at odds" with the physical evidence. The petition then raised a free-standing claim of actual innocence because Coleman "essentially confessed" to Key and Hines a year after defendant was arrested. The petition next argued that the trial court denied defendant the opportunity to present a defense when it barred evidence that Coleman "confessed" and that defendant was denied effective assistance when appellate counsel failed to challenge the suggestive identification on direct appeal. Attached to the petition were certain police reports, the sketch generated from Sanchez's description, and three affidavits from Key.

¶ 23    Key averred that police visited her home on May 29, 2003, and told her to come to a police station. Once there, she sat in a room for a "long time," and was patted down and asked about her jewelry. Key was told to sign a paper, and taken to another room where she was told to memorize information including that Hines said defendant killed someone. She next was taken to another room where she was told defendant had been arrested for murder, and was asked to initial "some more things." Only then did she see defendant.

¶ 24    Key further averred that Coleman told her he knew that defendant did not commit "the robbery and murder." Specifically, a month after defendant was arrested, she was in a vehicle with Hines and Coleman when Coleman stated that he knew it would "not be like [defendant] to do something like that." When she asked Coleman how he knew defendant did not commit the offense, Coleman said he was sorry. When Key told trial counsel about the conversation, he said he would have someone talk to Coleman.

¶ 25    The State filed a motion to dismiss, and defendant filed a response. Attached to the response was Key's affidavit in which she averred that her earlier affidavits were incorrect and that the conversation with Coleman occurred within a year of defendant's arrest rather than within a month.

¶ 26    Postconviction counsel passed away on January 31, 2017, and substitute postconviction counsel was assigned. On March 17, 2017, substitute postconviction counsel acknowledged that the case was set for argument and asked the court to approve certain discovery. The State objected because a motion to dismiss and response had already been filed. The State further stated that discovery had been tendered and a Rule 651(c) certificate had been filed. The circuit court ordered substitute postconviction counsel to brief the discovery issue.

¶ 27    At a subsequent hearing, substitute postconviction counsel told the court that defendant instructed her to withdraw the discovery issue, review the transcript, and set the case for argument. She further stated she would file a Rule 651(c) certificate after reviewing the transcript.

¶ 28    On April 20, 2018, private postconviction counsel entered her appearance and substitute postconviction counsel was granted leave to withdraw.

¶ 29    On July 20, 2018, private postconviction counsel filed a Rule 651(c) certificate stating that she consulted with defendant by phone, mail, electronic means, or in person to ascertain his constitutional deprivations, and examined the trial proceedings. Private postconviction counsel acknowledged that she was defendant's third postconviction attorney and that defendant instructed her to respond to the State's motion to dismiss based upon the amended postconviction petition filed by his previous attorney. The court then heard arguments on the motion to dismiss.

¶ 30    On September 21, 2018, the circuit court granted the State's motion to dismiss. The court noted that although defendant alleged his statement reflected police coercion, this issue was litigated in a motion to suppress and could have been raised on direct appeal. Additionally, defendant's claim that Coleman was the "actual killer" was refuted by the record when defendant was identified by Sanchez and gave an inculpatory statement. Finally, although defendant argued he was denied effective assistance of appellate counsel for not raising these issues on direct appeal, the court concluded that defendant did not establish that counsel's performance was "objectively unreasonable" because "[t]here's a very strong presumption that the lawyer in the case acted reasonably." The court therefore granted the State's motion to dismiss.

¶ 31    Before this court, defendant does not challenge the dismissal of his petition on the merits. Rather, he contends that remand is warranted because private postconviction counsel failed to

comply with the requirements of Rule 651(c), and he was denied the reasonable assistance of postconviction counsel. Defendant has therefore forfeited for review any substantive claim challenging the dismissal of the petition on the merits. *People v. Cotto*, 2016 IL 119006, ¶ 49.

¶ 32   On appeal, defendant first contends that the cause must be remanded for further proceedings under the Act because the Rule 651(c) certificate filed by private postconviction counsel was facially invalid. Defendant argues that private postconviction counsel's certificate did not state that she made any amendments to defendant's *pro se* petition necessary for an adequate presentation of his contentions of constitutional deprivation. We review an attorney's compliance with Rule 651(c) *de novo*. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 17.

¶ 33   Our supreme court has held there is "no constitutional right to counsel, effective or otherwise," in postconviction proceedings. *People v. Custer*, 2019 IL 123339, ¶ 30. The right to counsel under the Act is a matter of legislative grace. *Id.* A postconviction petitioner is thus "entitled to only 'the level of assistance guaranteed by the Act.' " *Id.* (quoting *People v. Perkins*, 229 Ill. 2d 34, 24 (2007)). This "required quantum of assistance has been judicially deemed to be a 'reasonable level,' a standard that is significantly lower than the one mandated at trial by our state and federal constitutions." *Id.* (quoting *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006)).

¶ 34   Pursuant to Rule 651(c), postconviction counsel must certify that counsel has "consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017); see also *People v. Kirk*, 2012 IL App (1st) 101606, ¶ 18. Compliance with the rule "ensure[s] that counsel shapes the

petitioner's claims into proper legal form and presents those claims to the court." *Perkins*, 229 Ill. 2d at 43-44. The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided the reasonable level of assistance guaranteed by the Act. *Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 35     In the case at bar, private postconviction counsel was defendant's third postconviction attorney, and entered her appearance prior to the hearing on the State's motion to dismiss. At the time she entered her appearance on April 20, 2018, defendant's supplemental postconviction petition, the State's motion to dismiss, and defendant's response had already been filed.

¶ 36     The record reveals that on January 15, 2016, defendant's original postconviction counsel filed a Rule 651(c) certificate and supplemental postconviction petition. The certificate stated he consulted with defendant by mail, phone, and in person to ascertain defendant's contentions of constitutional deprivation, obtained and read the trial transcripts, and prepared a supplemental postconviction petition which "augment[ed] the concerns already expressed" in defendant's *pro se* petition. Thus, original postconviction counsel, who drafted and filed the supplemental postconviction petition, complied with the rule. See Ill. S. Ct. R. 651(c) (eff. Feb 6, 2013).

¶ 37     Defendant does not dispute that his original postconviction counsel filed a Rule 651(c) certificate. However, he argues that private postconviction counsel was herself required to comply with Rule 651(c)'s requirements and that her failure to do so requires remand for further proceedings under the Act. We disagree.

¶ 38     *People v. Marshall*, 375 Ill. App. 3d 670 (2007), is instructive. There, the defendant, who was denied postconviction relief following an evidentiary hearing, argued that her attorneys at the hearing were required to comply with the requirements of Rule 651(c) even though a different

attorney, who represented her during second stage proceedings, had already certified compliance with the requirements of the rule. *Id.* at 672, 679. In rejecting the defendant's argument, we held that "Rule 651(c)'s requirements must be met only once and not, as defendant suggests, by attorneys representing a defendant at each stage of postconviction proceedings." *Id*. at 682.

¶ 39    We explained that postconviction counsel has a specific role at each stage of proceedings under the Act. At the second stage, postconviction counsel must satisfy Rule 651(c)'s requirements by consulting with the defendant, reviewing the record, and making any necessary amendments to the defendant's *pro se* petition "so that the State can fully review the defendant's claims and determine if it will move to dismiss them." *Id.* at 683. Postconviction counsel "at the evidentiary hearing stage," however, "must argue the merits of the postconviction petitioner's claims as presented in the petition following review by counsel at the second stage." *Id*. Thus, we concluded that "Rule 651(c) does not require third-stage counsel to duplicate the efforts of second-stage counsel." *Id*. Rather, "at the third stage of postconviction review [counsel] argues the merits of the petition as it is presented by second-stage counsel." *Id.* In other words, "Rule 651(c)'s requirements must be met only once ***." *Id.* at 682; see also *People v. Bell*, 2014 IL App (3d) 120637, ¶ 14 (Rule 651(c) applies to claims raised in original *pro se* postconviction petition).

¶ 40    More recently, in *People v. Smith*, 2020 IL App (1st) 181220, the defendant argued on appeal that the cause should be remanded for further proceedings under the Act when the attorney who represented him at the hearing on the State's motion to dismiss his petition did not comply with the requirements of Rule 651(c).

¶ 41    In that case, the defendant's *pro se* petition was docketed and postconviction counsel from the Office of the Public Defender was appointed. Postconviction counsel then filed a Rule 651(c)

certificate attesting that she consulted with the defendant by phone to ascertain his contentions of deprivations of constitutional rights, reviewed the transcript of his trial and the briefs from his direct appeal, spoke with trial counsel, researched the issues in the *pro se* petition, and determined that no supplemental petition was necessary to adequately present the defendant's contentions. *Id.* ¶ 8. The State filed a motion to dismiss and postconviction counsel filed a response. *Id.* ¶ 9.

¶ 42     At some point after filing the response to the motion to dismiss, the defendant's original postconviction counsel left the Office of the Public Defender, and new postconviction counsel was appointed. *Id.* ¶ 10. New postconviction counsel represented the defendant at the hearing on the State's motion to dismiss, which the circuit court granted after argument. *Id.*

¶ 43     On appeal, the defendant argued that the cause should be remanded for further proceedings because new postconviction counsel did not file a Rule 651(c) certificate and the record did not otherwise establish that she "independently complied" with the duties outlined in the rule. *Id.* ¶ 13. Although the defendant did not allege that original postconviction counsel failed to comply with Rule 651(c), he argued that regardless of that compliance, new postconviction counsel, as the attorney who represented him at the hearing on the State's motion to dismiss, was also required to comply with the requirements of the rule. *Id.* We disagreed.

¶ 44     Applying *Marshall*, we noted that the defendant did not dispute that original postconviction counsel consulted with him to ascertain his contentions of constitutional error, reviewed the record of his trial proceedings, and reasonably determined that no amendments to his *pro se* petition were necessary to adequately present his claims. *Id.* ¶ 19. By certifying compliance with Rule 651(c), original postconviction counsel created the rebuttable presumption, which the defendant did not attempt to overcome, that she provided the level of reasonable assistance mandated by the Act. *Id.*

We further noted that original postconviction counsel responded to the State's motion to dismiss. Thus, when new postconviction counsel was appointed, "all that was left to do" was to argue the defendant's position at the hearing on the State's motion to dismiss. *Id.* ¶ 20.

¶ 45 Like the attorneys at the evidentiary hearing in *Marshall*, new postconviction counsel's role was different from that of the attorney she replaced. *Id.* Specifically, new postconviction counsel's role was to address the arguments raised in the State's motion to dismiss, and " 'argue the merits of [the defendant's] claims as presented in the petition following review by [original postconviction counsel].' " *Id.* (quoting *Marshall*, 375 Ill. App. 3d at 683). In order to perform that "limited role," it was unnecessary for new postconviction counsel to independently consult with the defendant to ascertain his contentions of constitutional error, review the trial record, or determine whether any amendments to the defendant's *pro se* petition were necessary to adequately present his claims. *Id.* In other words, new postconviction counsel could rely on the certificate of compliance filed by original postconviction counsel with respect to those duties and was not required " 'to duplicate' " original postconviction counsel's efforts. *Id.* (quoting *Marshall*, 375 Ill. App. 3d at 683).

¶ 46 We concluded that because Rule 651(c) exists to ensure that a defendant receives reasonable assistance of counsel under the Act, and original postconviction counsel certified that she complied with those duties, original postconviction counsel's Rule 651(c) certificate created a rebuttable presumption that the defendant received reasonable assistance. *Id.* ¶ 23. Therefore, new postconviction counsel, who was appointed prior to the hearing on the State's motion to dismiss, was not required to duplicate original postconviction counsel's efforts and independently perform the duties specified in Rule 651(c) in order to provide reasonable assistance at the hearing. *Id.*

Accordingly, because the defendant failed to rebut the presumption of reasonable assistance created by original postconviction counsel's Rule 651(c) certificate or identify any specific deficiency in new postconviction counsel's performance other than her failure to independently comply with Rule 651(c), there was no basis to remand the matter. *Id.* ¶ 24.

¶ 47    Similarly, here, defendant's original postconviction counsel certified that he complied with the duties specified in Rule 651(c), including consulting with defendant by mail, phone, and in person to ascertain defendant's contentions of constitutional deprivation, obtaining and reading the trial transcripts, and preparing a supplemental postconviction petition which "augment[ed] the concerns already expressed" in defendant's *pro se* petition. Thus, original postconviction counsel's certificate ensured that defendant received reasonable assistance of counsel as required by the Act. *Id.* ¶ 23. Private postconviction counsel, who represented defendant at the hearing on the State's motion to dismiss, was therefore not required to duplicate original postconviction counsel's efforts and independently perform the duties required by Rule 651(c) in order to provide reasonable assistance at the hearing on the motion to dismiss. *Id.* Rather, all that was left for private postconviction counsel to do was argue at the hearing on the State's motion to dismiss. *Id.* ¶ 20.

¶ 48    This conclusion is supported by the record, which reveals that private postconviction told the court that defendant instructed her to respond to the State's motion to dismiss based upon the supplemental petition filed by original postconviction counsel. Accordingly, as private postconviction counsel was not required to file a Rule 651(c) certificate, the fact that the certificate she filed did not comply with the rule is not a basis to remand this matter for further proceedings.

¶ 49    Defendant next contends that he was denied the reasonable assistance of postconviction counsel when none of his postconviction attorneys amended the *pro se* petitions to allege that he

was denied the effective assistance of appellate counsel when counsel failed to allege a violation of *Chambers v. Mississippi*, 410 U.S. 284 (1973), on direct appeal, and was also denied the effective assistance of trial counsel when counsel failed to present testimony from Key to "corroborate" defendant's testimony that the police coerced a confession.

¶ 50    Although defendant argues that all three of his postconviction attorneys had the same duty to amend his *pro se* filings, we disagree. As discussed, because original postconviction counsel was the attorney who complied with the requirements of Rule 651(c), the question is whether original postconviction counsel rendered reasonable assistance when amending the *pro se* filings.

¶ 51    A defendant does not have a constitutional right to effective assistance at a postconviction proceeding; rather, the Act provides a statutory right to "a reasonable level of assistance by appointed counsel." *People v. Moore*, 189 Ill. 2d 521, 541 (2000). The filing of a Rule 651(c) certificate creates a rebuttable presumption that postconviction counsel acted reasonably and defendant received the representation required by the rule. *Profit*, 2012 IL App (1st) 101307, ¶ 19. We review counsel's compliance with Rule 651(c) *de novo*. *Id.* ¶ 17.

¶ 52    Here, original postconviction counsel filed a Rule 651(c) certificate stating he consulted with defendant by mail, phone, and in person to ascertain defendant's contentions of constitutional deprivation, obtained and read the trial transcripts, and prepared a supplemental postconviction petition which "augment[ed] the concerns already expressed" in defendant's *pro se* petition. Defendant does not challenge the validity of the certificate filed by original postconviction counsel. Accordingly, there is a rebuttable presumption that original postconviction counsel acted reasonably and, in order to overcome this presumption, defendant must "demonstrate[e] his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *Id.* ¶ 19.

¶ 53 Defendant contends that original postconviction counsel violated Rule 651(c) by failing to amend his *pro se* petition to present his claims in appropriate legal form. Specifically, defendant alleges that original postconviction counsel allowed the claims to be forfeited by failing to allege that appellate counsel was ineffective and by not reshaping defendant's claim that he was denied due process by police coercion into a constitutional claim that he was denied effective assistance by trial counsel's failure to present Key's testimony to corroborate this claim.

¶ 54 Generally, when a claim could have been raised on direct appeal but was not, it is waived in a postconviction proceeding. *People v. Turner*, 187 Ill. 2d 406, 412-13 (1999). However, if postconviction counsel amends the postconviction petition to allege ineffective assistance of appellate counsel for failing to raise the claim on direct appeal, it is not procedurally barred. *Id.* at 413. "Our supreme court has held that a failure of postconviction counsel to 'make a routine amendment to [a] post-conviction petition which would overcome the procedural bar of waiver' constitutes unreasonable assistance in violation of Rule 651(c)." *People v. Kluppelberg*, 327 Ill. App. 3d 939, 947 (2002) (quoting *Turner*, 187 Ill. 2d at 412-13).

¶ 55 "Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). Where, as here, the presumption of reasonable assistance applies, " 'the question of whether the *pro se* allegations had merit is crucial to determining whether counsel acted unreasonably by not filing an amended petition.' " *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 30 (quoting *Profit*, 2012 IL App (1st) 101307, ¶ 23). A defendant claiming ineffective assistance of appellate counsel for failure to argue an issue must show that failing to raise that issue was objectively unreasonable and prejudiced defendant. *People v. Easley*, 192 Ill. 2d 307, 328-29 (2000). "Appellate counsel is not obligated to

brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which *** are without merit, unless counsel's appraisal of the merits is patently wrong." *Id.* at 329.

¶ 56     Here, the trial court considered the *Chambers* factors and determined that Coleman's alleged confession was not made under circumstances that provided a "considerable assurance of reliability." Moreover, Key's affidavits do not support defendant's *Chambers* claim. In her 2007 affidavit, Key merely asserted that Coleman "started crying telling [her] it was his fault that [defendant] was locked up," but not that Coleman admitted to committing the offense. Likewise, Key's 2016 affidavit averred that Coleman said he knew defendant did not do it and it "would not be like him to do something like this," but he did not say how he knew defendant did not commit the crime. Postconviction counsel therefore did not act unreasonably by failing to raise a nonmeritorious claim of ineffective assistance of appellate counsel. See, *e.g.*, *People v. Harrigan*, 2021 IL App (3d) 180579-U, ¶ 26 (finding that "postconviction counsel did not violate Rule 651(c) in failing to raise an ineffective assistance of appellate counsel claim, because that claim lacked merit"); see also *People v. Rials*, 345 Ill. App. 3d 636, 642 (2003) (noting that postconviction counsel is " 'only required to investigate and properly present the *petitioner's* claims. *** Counsel's responsibility is to adequately present those claims which the *petitioner* raises' " (Emphasis in original.)).

¶ 57     Defendant essentially argues that original postconviction counsel should have included a claim that defendant was denied the effective assistance of appellate counsel by counsel's failure to raise a violation of *Chambers* on direct appeal rather than merely argue the issue on the merits, and that original postconviction counsel's failure resulted in forfeiture of this issue. In other words,

this failure resulted in the merits of the claim not being reached. However, the record reveals that the amended petition also raised a free-standing claim of actual innocence based upon Coleman's confession to Key and Hines. The circuit court addressed this claim on the merits when it found that defendant's claim of actual innocence was refuted by the record where Sanchez identified him as the offender and defendant gave an inculpatory statement. In his petition for rehearing, defendant asserts that "the circuit court expressly found that claims pertaining to Coleman's out-of-court confessions were forfeited." The court noted that appellate counsel "should have raised these issues" on direct appeal, but immediately addressed ineffective assistance of counsel (an exception to forfeiture) and found that defendant had failed to establish that appellate counsel's decision was objectively unreasonable. Thus, contrary to defendant's position on appeal, the circuit court considered the merits of this issue and did not make an express finding of forfeiture.

¶ 58    In reaching this conclusion, we reject defendant's reliance on *People v. Kirk*, 2012 IL App (1st) 101606, for the proposition that he was denied reasonable assistance when postconviction counsel did not amend the postconviction petition to include a claim that defendant was denied the effective assistance of appellate counsel for not raising a claim under *Chambers* on direct appeal.

¶ 59    In *Kirk*, the defendant was convicted of aggravated battery after testifying at trial that he shot the victim in self-defense. *Id.* ¶ 6. The defendant filed an unsuccessful posttrial motion alleging, *inter alia*, the trial court erred in not permitting certain "*Lynch* evidence" regarding the victim's violent nature. *Id.*; see also *People v. Lynch*, 104 Ill. 2d 194, 199-200 (1984) (when self-defense is raised, defendant may present appropriate evidence of victim's aggressive and violent character). After an unsuccessful direct appeal, the defendant filed a *pro se* postconviction petition

alleging that trial counsel was ineffective and suggesting that other witnesses could have testified to the victim's violent behavior. *Id.* ¶¶ 6-7.

¶ 60    The first assistant public defender who served as postconviction counsel filed a Rule 651(c) certificate, stating that she examined the *pro se* petition and, " 'as it adequately presents [the defendant's] issues, a supplemental petition will not be presented.' " *Id*. ¶ 10. A second assistant public defender was later appointed postconviction counsel, and the State moved to dismiss the petition. *Id*. ¶ 11. At the hearing on the motion, second postconviction counsel argued, for the first time, that the defendant's appellate counsel rendered ineffective assistance by failing to argue that the trial court erred in precluding additional *Lynch* evidence. *Id*. ¶ 13. Second postconviction counsel stated that he believed that " 'this [issue] has merit to it.' " *Id*. The court denied the petition.

¶ 61    On appeal, this court concluded that second postconviction counsel "rendered unreasonable assistance by failing to amend the defendant's *pro se* postconviction petition to include the claim of ineffective assistance of appellate counsel raised at the hearing on the State's motion to dismiss." *Id*. ¶ 36. We explained that second postconviction "counsel did not comply with the duties imposed by Rule 651(c)" where he "effectively admitted to the court that the defendant's 'main claim' included ineffective assistance of appellate counsel, but failed to include that claim in the petition." *Id*. ¶ 31 (quoting *People v. Schlosser*, 2012 IL App (1st) 092523, ¶ 28). Accordingly, we remanded the cause for further proceedings, including allowing the defendant leave to amend his postconviction petition. *Id*. ¶ 36.

¶ 62    The facts of this case do not resemble *Kirk*, where second postconviction counsel attempted to raise a claim for the first time at oral argument on the State's motion to dismiss, long after the filing of a Rule 651(c) certificate. Here, defendant's argument is that original postconviction

counsel failed to include an issue in the amended petition. Moreover, contrary to defendant's argument, the record reveals that the circuit court addressed the merits of defendant's claim that Coleman was the actual offender when analyzing the claim of actual innocence and the effectiveness of appellate counsel.

¶ 63 Defendant finally contends that he was denied the reasonable assistance of counsel because original postconviction counsel did not raise a claim of ineffective assistance of trial counsel for failing to elicit testimony from Key that would corroborate defendant's testimony that his confession was coerced. He argues that because his due process claim based on police coercion was barred, the only "cognizable means of 'constitutionalizing' this claim," that is, presenting it on the merits to the circuit court, was to use the "prism" of ineffective assistance of trial counsel.

¶ 64 However, "postconviction counsel is not required to amend a defendant's *pro se* postconviction petition [citation] but, rather is only required to investigate and present the defendant's claims [citation.]" *Kirk*, 2012 IL App (1st) 101606, ¶ 21. Although postconviction counsel "*may* conduct a broader examination of the record [citation] and may raise additional issues" that were not raised in the *pro se* petition, "there is no obligation to do so." (Emphasis in original.) *Pendleton*, 223 Ill. 2d at 476.

¶ 65 Here, defendant alleged in his *pro se* petition that his confession was coerced and concedes on appeal that this claim was barred in this postconviction proceeding because it was of record and could have been raised on direct appeal. See *Turner*, 187 Ill. 2d at 412-13. To the extent that defendant argues he was denied reasonable assistance when original postconviction counsel failed to reframe this issue as one of ineffective assistance of trial counsel for failure to call a witness whose testimony would corroborate defendant's testimony, we disagree. Defendant has not

persuaded us that the proposed amendment was a routine amendment that would overcome a procedural bar. See *Perkins*, 229 Ill. 2d at 44 (noting that postconviction counsel must meet certain procedural requirements to present a constitutional claim under the Act, including, *inter alia*, amending a *pro se* petition to allege ineffective assistance of appellate counsel to avoid waiver, attempting to obtain affidavits from witnesses identified in the *pro se* petition, and alleging available facts on the lack of culpable negligence to avoid untimeliness).

¶ 66    This is not a situation where a defendant argues that he was denied the reasonable assistance of postconviction counsel based upon a failure to amend his *pro se* filings to include a claim that he was denied effective assistance by trial counsel's failure to argue that his statement was coerced. Rather, here, defendant argues that original postconviction counsel should have included a claim in the amended petition that trial counsel's failure to present a witness who could provide "crucial corroboration" for defendant's testimony that he was coerced into making a statement constituted ineffective assistance such that defendant's due process claim based on coercive police conduct could be reached on the merits in this postconviction petition.

¶ 67    Although defendant raised numerous challenges to trial counsel's conduct in the *pro se* petition, that was not one of them. Thus, defendant essentially argues that original postconviction counsel acted unreasonably by failing to raise a new issue. However, when filing an amended petition, postconviction counsel is not required to raise new issues that were not raised in the *pro se* petition. See *People v. Davis*, 156 Ill. 2d 149, 164 (1993) (postconviction counsel "is only required to investigate and properly present the *petitioner's* claims" (emphasis in original)). Therefore, original postconviction counsel cannot be said to have provided unreasonable assistance for failing to raise a new issue that defendant neglected to raise in his *pro se* petition.

¶ 68 Accordingly, defendant has not rebutted the presumption that original postconviction counsel substantially complied with Rule 651(c) and provided the reasonable assistance contemplated by the Act. *Profit*, 2012 IL App (1st) 101307, ¶¶ 19, 31. As such, we reject defendant's request that we remand for further second-stage proceedings under the Act.

¶ 69 For the reasons explained above, we affirm the judgment of the circuit court.

¶ 70 Affirmed.

¶ 71 PRESIDING JUSTICE HYMAN, specially concurring:

¶ 72 I agree with the result the majority reaches but would limit the analysis to the facts and would not extend the rule of *People v. Marshall*, 375 Ill. App. 3d 670 (2007), wholesale into second-stage postconviction proceedings. *Marshall* involved proceedings at the third stage at which point it is "illogical" to require counsel to perform the enumerated duties in Rule 651(c) again. *Id.* at 683.The reason matters: By the third stage, the trial court has already concluded that the pleadings make a substantial showing of a constitutional violation, so the only thing left to do is to test the pleadings with evidence at a hearing. *Id.* All of counsel's pleading stage responsibilities—consultation with the petitioner, ascertainment of the petitioner's contentions, examination of the record, and amendment to the petition (see Ill. S. Ct. Rule 651(c) (eff. July 1, 2017))—are done by the third stage.

¶ 73 I would not adopt a *per se* rule absolving replacement second-stage counsel from filing a new, compliant 651(c) certificate. The rule in *Marshall* might not work so well if replacement counsel comes into the case after the initial 651(c) certificate was filed but before the State moved to dismiss—replacement counsel may find issues original counsel missed. The passage of time also may spoil a 651(c) certificate filed by original counsel, especially should new case law is

decided in the interim. And some of the requirements in Rule 651(c), especially examining the trial record, seem like they should apply to all second-stage counsel, even if that counsel's sole job is to argue an already-filed motion.

¶ 74    The facts here, however, are unique. Replacement counsel asked for, and received, additional time to review the underlying trial record. Counsel tried to get additional discovery and cut short her efforts at Battle's request to litigate his petition as it existed. Most importantly, the State's motion to dismiss was fully briefed and, given Battle's request to proceed, truly the only thing left to do at the second stage was argue the motion.

¶ 75    These particular facts exemplify *Marshall*'s concern about duplicative efforts of multiple counsel. *Id.* I join the majority's judgment with the understanding that *Marshall* may not apply to every second-stage case where new counsel comes in after the filing of a 651(c) certificate by original counsel.

¶ 76    JUSTICE WALKER joins in this special concurrence.